Keyono COOK *v.* STATE of Arkansas

CR 01-0224                                     45 S.W.3d 820

Supreme Court of Arkansas
Opinion delivered June 14, 2001

*Julia B. Jackson,* for appellant.

*Mark Pryor,* Att'y Gen., by: *Clayton K. Hodges,* Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellant, Keyono Cook, was convicted of capital felony murder, aggravated robbery, and theft of property. The jury sentenced him to life imprisonment without parole plus twenty-seven years in the Arkansas Department of Correction. Mr. Cook's only point on appeal has to do with the admissibility of two documents. He contends that the documents were not relevant, that their probative value was substantially outweighed by their prejudicial effect, and that they

were introduced solely to prove that Mr. Cook was a bad person. We disagree and affirm.

On April 13, 1999, Mr. Cook entered a Western Sizzlin with the purpose of robbing the restaurant. During the robbery, he shot and killed the manager, David Nichols. Three days later, a detective with the Little Rock Police Department stopped Mr. Cook's brother and co-defendant, Denaro Cook, who was driving a vehicle identified as the one used in the robbery. With Denaro's permission, the detective searched the vehicle and found a black notebook on the front seat. On top of the notebook he found a document entitled "Plan A and Plan B." Inside the notebook, on top of other papers, he found a rap song entitled "Give Up the Strilla." Mr. Cook admitted both to his involvement in the robbery and to being the author the two documents. Over his objections, both documents were admitted into evidence at trial.

The document entitled "Plan A and Plan B," was handwritten as follows:

| Plan A | Plan B |
| --- | --- |
| look around first and make sure don't nobody see | |
| 1) Wait by pay phone | Wait across the street |
| 2) See Target/walk toward him | See Target/run across the street |
| 3) Put strap to his back–Go back in | Put strap to his back–Go back in |
| 4) Take him to the office | Take him to the office |
| 5) Let him open the door | Let him open the door |
| 6) Make him give all the money | including change |
| 7) Tie him up and make | him go to the freezer |
| 8) get the keys and | go out through the back door |
| 9) lock the door back | and throw the keys in the next 3 dump |
| 10) walk down to the end and make sure you | of the alley and take off clothes don't drop s**t |

Plan A + Plan B = Done Deal

Mr. Cook authored the following handwritten rap song:

Give Up (The Strilla)  By: Buck – shot

Look out 4 this muthaf**n killa
on the for realla n**a, you bets to give up the strilla

or getta, muthaf**n slugg assigned to yo a**
or you can do the s**t the easy way, give up the cash
as bad as my muthaf**n a** is doin,
you refuse, you loose, you snooze, you made the news
d**n, dude you cruel, that's what my peoples say
I ain't cruel, I choose, to be on a paper chase
gone of that hay, all about my feddy.
If I ain't got no strapp, my second choices my michete
I'm ready to do yo a** up n**a
And give up, give up, the f**n strilla, 4 realla
Chorus: Give up, Give up, Give up the Strilla.
If you don't, you don't. I'ma have to kill ya.
I creepin, keepin thing on the low.
Betta gett ready n**a, Im fits to pull a kickdoe.
Maintain to explain the game main, ain't a d**n thang
change, Buck-shots my muthaf**n name
all about my strilla and my feddy pimp
playin the biggest n**as, for some muthaf**n wimps
attempt to get rich on these streets
for n**az wit beef, I brings the Heast
Step back Hoe, if you didn't already know
I comes to yo hood, and crank up the show
and slowly but slowly unleash the beast
f**n hoes, killin n**as, and anybody with cheese
I love money like my muthaf**n fam-il-y
I want the money from you, and everybody around me
I'ma make yo funky a** die slow
but befo you die give up the strilla Hoe.[1]

## I. Standard of Review

█ In matters relating to the admission of evidence under Arkansas Rules of Evidence 401, 403, and 404(b), a trial court's ruling is entitled to great weight and will not be reversed absent an abuse of discretion. *Arthur v. Zearley*, 337 Ark. 125, 138, 992 S.W.2d 67, 74 (1999) (Rule 401); *Greene v. State*, 317 Ark. 350, 355, 878 S.W.2d 384, 387 (1994) (Rule 403); and *Abernathy v. State*, 325 Ark. 61, 64, 925 S.W.2d 380, 38 (1996) (Rule 404(b)).

---

[1] Mr. Cook goes by the nickname "Buck". In street slang, "strilla", "feddy", "beef", and "cheese" mean money. A "strap" is a gun, and a "slug" is a bullet.

## II. Rule 401 — Relevancy

■ " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ark. R. Evid. 401. Mr. Cook argues that the two documents were not relevant because they were remote in time and the events described in the documents were not similar to the actual crime. We disagree.

■ The two documents were found three days after the crime on the front seat of the vehicle used in the crime. Both documents were written by Mr. Cook and both describe aggravated robbery scenarios. Whether Mr. Cook intended to commit aggravated robbery is a material issue in the case; so, the documents make the existence of his intent to commit aggravated robbery more probable than it would be without the evidence. Under these facts, we cannot say the trial court abused its discretion in finding the two documents relevant under Rule 401.

## III. Rule 403 — Balancing Probative Value and Prejudicial Effect

■ "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Ark. R. Evid. 403. Mr. Cook contends that the two documents were prejudicial because each describes criminal activity, but they were not probative because the State offered the documents to prove intent, and intent to kill is not an element of capital felony murder.

■ In this case, the criminal activity that Mr. Cook claims makes the documents prejudicial also makes them probative of his intent to commit aggravated robbery, the underlying felony for his capital felony murder charge. Here, we are dealing with capital felony murder where the murder is perpetrated "in the course and furtherance of" aggravated robbery. The culpable intent or *mens rea* relates to the crime of the underlying felony — aggravated robbery — and not the murder itself. *Jones v. State*, 336 Ark. 191, 984 S.W.2d 432 (1999); *Dixon v. State*, 319 Ark. 347, 891 S.W.2d 59 (1995). "Plan A and Plan B" was a ten-step plan to commit an

aggravated robbery. The rap song, "Give Up the Strilla," discussed using a "strap" (or gun) to force a victim to "give up the cash" — again, an aggravated robbery. Because both documents were probative of Mr. Cook's intent to commit aggravated robbery, the trial court did not abuse its discretion in holding that the prejudicial effect did not substantially outweigh the probative value of the evidence.[2]

### IV. Rule 404(b) — Prior Bad Acts

■■ Arkansas Rule of Evidence 404(b) states:

> (b) *Other Crimes, Wrongs, or Acts*. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Evidence offered under Rule 404(b) must be independently relevant, thus having a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *McGehee v. State*, 338 Ark. 152, 952 S.W.2d 110 (1999). The list of exceptions to inadmissibility in Rule 404(b) is not an exclusive list, but instead, it is representative of the types of circumstances under which evidence of other crimes or wrongs or acts would be relevant and admissible. *Williams v. State*, 343 Ark. 591, 602, 36 S.W.3d 324, 331 (2001).

---

[2] This court has previously admitted a rap song as probative of intent. *Britt v. State*, 334 Ark. 142, 974 S.W.2d 436 (1998). Other jurisdictions have also admitted songs and song lyrics as proof of intent. *See State v. Koskovich*, 776 A.2d 144 (N.J. 2001) available in 2001 WL 618579 (N. J. 2001) (admitting violent song lyrics as proof of intent); *State v. Nance*, 533 N.W.2d 557, 561 (Iowa 1995) (admitting evidence that defendant said words, "one to the cranium," from a rap song minutes before shooting the victim.); *State v. Green*, 738 N.E.2d 1208, 1217 (Ohio 2000) (admitting evidence that defendant made up a rap song describing the crime with the words "I shot him five times, and he dropped, he tried to run, so I shot him"); *Appellate Court of Ill. v. Spraggins*, 723 N.E.2d 359, 360 (Ill. App. 1999) (allowing the introduction of a rap song defendant sang in jail in which he substituted words from the original song with his own wording indicating his intent to kill a witness against him.); *Green v. State*, 934 S.W.2d 92, 104 (Tex. App. 1996) (allowing testimony of letter written while defendant was in prison including an inculpating phrase from a rap song.); *State v. Deases*, 476 N.W.2d 91, 93 (Iowa App. 1991) (allowing evidence that defendant wrote a rap song about killing the victim).

In *Williams*, we reiterated the difference between the requirements for the admission of evidence to prove *modus operandi* and the test for admissibility under one of the exceptions to Rule 404(b). *Id.* at 599, 36 S.W.3d at 329. The two evidentiary concepts are different. The test for admission of prior bad acts under Rule 404(b) is whether the evidence offered has independent relevance to a fact of consequence in the case. *Id.* at 602, 36 S.W.3d at 331. Whereas, the test for the admission of evidence to prove identity using *modus operandi* has two requirements: "(1) both acts must be committed with the same or strikingly similar methodology; and (2) the methodology must be so unique that both acts can be attributed to one individual." *Id.* at 599, 36 S.W.3d at 329. *See Haire v. State*, 340 Ark. 11, 8 S.W.3d 468 (2000).

Mr. Cook again asserts that the two documents should not have been admitted into evidence because (a) the criminal activity described in each document is not substantially similar to the crime here, and (b) the State failed to prove that the documents were not remote in time. First, the degree of similarity between the prior bad acts and the present crime required for admission under Rule 404(b) may vary with the purpose for which the evidence is admitted. *Sasser v. State*, 321 Ark. 438, 447, 902 S.W.2d 773, 778–79 (1995) (citing 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 112, n. 4 and accompanying text (2d ed.1994) ("To be probative, prior criminal acts must require an intent similar to that required by the charged crime, although it is usually said that the prior crime need not closely resemble the charged crime."); 1 John W. Strong, *McCormick on Evidence* § 190, n. 31 and accompanying text (4th ed. 1992) ("The similarities between the act charged and the extrinsic acts [admitted to show the act charged was not performed inadvertently, accidentally, involuntarily, or without guilty knowledge] need not be as extensive and striking as is required ... [to show *modus operandi* ]")). Moreover, the trial judge is afforded considerable leeway when determining whether the circumstances of prior bad acts are sufficiently similar to the present crime of capital felony murder to justify proof of the former as probative of the defendant's intent to commit the predicate offense of the latter. *Sasser v. State, supra*. Thus, the trial court did not abuse its discretion in determining that because the two documents described the commission of an aggravated robbery and were authored by Mr. Cook, they were similar enough to the crime charged to meet Rule 404(b) requirements.

In support of his timeliness argument, Mr. Cook states that there was no proof as to when "Plan A and Plan B" was

authored. He also notes that one of the witnesses who testified on his behalf dated the song, "Give Up the Strilla," as being three to four years old. We have often recognized the superior position of the trial judge to determine the credibility of a witness in a suppression hearing. *Wright v. State*, 335 Ark. 395, 404, 983 S.W.2d 397, 401 (1999). The trial judge was not required to accept the credibility of Mr. Cook's witness; rather, evaluation of the credibility of that witness for admissibility purposes lay within the trial judge's sound discretion. Further, the witness testified during trial, thereby allowing the jury to consider the testimony when weighing the credibility of the evidence. Regardless of when the song or the two-step plan was written, other factors may be considered when evaluating timeliness. Both documents were found in the getaway vehicle three days after the crime. The song was found on top of other papers inside a notebook that was directly underneath the "Plan A and Plan B" document. Given the circumstances of the case at bar, we cannot say the trial court abused its discretion in admitting the rap song written by Mr. Cook and the "Plan A and Plan B" document, also authored by him. Both documents were independently relevant proof of Mr. Cook's intent to commit the underlying felony — aggravated robbery. We therefore conclude that both documents were admissible under the intent exception to Rule 404(b).

## V. Rule 4-3(h)

The transcript of the record in this case has been reviewed in accordance with our Rule 4–3(h) which requires, in cases in which there is a sentence to life imprisonment or death, that we review all prejudicial errors in accordance with Ark. Code Ann. § 16-91-113(a). None have been found.

Affirmed.