Kisha ILO *v.* STATE of Arkansas

CA CR 01-1066                                   69 S.W.3d 55

Court of Appeals of Arkansas
Division I
Opinion delivered March 6, 2002

*Bill Luppen*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge. Appellant Kisha Ilo appeals her convictions for possession of marijuana with intent to deliver, maintaining a drug premises, and possession of drug paraphernalia. The convictions arose from the evidence seized in a search of her home located at 1906 Dave Ward Drive in Conway, Arkansas, and the subsequent denial of her motion to suppress. Appellant entered a conditional guilty plea reserving her right to appeal the suppression issue. Appellant was sentenced to six years of probation and a $5000 fine. We reverse and remand.

When this court reviews a trial court's ruling on a motion to suppress, we make an independent determination based upon the totality of the circumstances. *Gilbert v. State*, 341 Ark. 601, 19 S.W.3d 595 (2000); *Bangs v. State*, 338 Ark. 515, 998 S.W.2d 738 (1999). We will reverse a trial court's ruling on a motion to suppress only if the ruling was clearly erroneous or clearly against the preponderance of the evidence. *Id.* Since the determination of a preponderance of the evidence turns on questions of credibility and the weight to be given testimony, we defer to the trial judge's superior position. *Lemons v. State*, 310 Ark. 381, 836 S.W.2d 861 (1992).

We first examine the facts as developed in the Faulkner County Circuit Court. On January 18, 2000, George Weatherly's vehicle was seen at appellant's residence for a few minutes. After the vehicle left, it was followed until police officers initiated a traffic stop due to an equipment violation. A search revealed a substantial amount of marijuana. Weatherly was arrested and questioned. The police stated that Weatherly told them that he had purchased marijuana at appellant's house for about a year and that he had seen a handgun in the house on at least two occasions as recently as two weeks ago.

Officers applied for a search warrant on January 19, 2000. An affidavit was provided to the magistrate issuing the warrant. The facts in support of the search warrant were as follows: an officer observed that during approximately fifteen hours of surveillance conducted over six weeks that there was short term, heavy traffic of persons coming and going from appellant's residence, many of whom only stayed two to three minutes; appellant's husband had a prior arrest for possession of a controlled substance in February 1998; on one occasion in December 1999, a vehicle occupant was seen discarding the interior tobacco of a cigar on the driveway, providing a vessel to pack marijuana and smoke it, a common practice in smoking marijuana; the officer approached the house on December 21, 1999, and spoke to the residents, during which time the officer smelled burning marijuana emanating from the opened door; a vehicle that was observed at the residence on January 18, 2000, (belonging to Weatherly) was stopped by police officers after leaving, and a search revealed one-quarter pound of marijuana; and the occupant of the vehicle searched told officers that he had been purchasing marijuana at this residence for approximately one year and had seen a handgun at the residence on at least two occasions and as recently as two weeks ago. The affidavit specifically requested that the knock-and-announce rule be excluded for the safety of the officers involved. The warrant was issued, though it did not specifically state that the no-knock requirement was waived. Later that day, the door of appellant's home was rammed, and the occupants were arrested and evidence seized.

Appellant moved to suppress the evidence gained in the search. At the suppression hearing, Weatherly, who had a prior felony, testified that he told officers about his purchase of marijuana but that he never said anything about guns being in the house. He did not recall ever seeing guns present. Two officers who were directly involved in the investigation contradicted that assertion in their testimonies. One officer did testify that though the request to forego the knock-and-announce rule was requested, no mention of dispensing that rule was made in the search warrant issued and that this was an oversight.

■ We examine the constitutional principles and case law as they apply to this situation. The Fourth Amendment protects an individual's legitimate expectation of privacy against unreasonable searches and seizures. *See Wilson v. Arkansas*, 514 U.S. 927, 115 S. Ct. 1914, 131 L.Ed.2d 976 (1995). The United States Supreme Court announced in *Wilson* that the common-law rule of knock-and-announce constitutes a portion of the Fourth Amendment

reasonableness inquiry. The Court traced the knock-and-announce principle back to early English common law. *See id.* The principle later became part of early American common law when many states, in conjunction with ratification of the Fourth Amendment, enacted constitutional provisions or statutes that incorporated English common law. *See id.* The Court observed that knock-and-announce was never treated as a blanket rule and that the courts inherently recognized the application of certain circumstances that justified an exception. *See id.*

■ Although the principle was accepted by American courts, it was not until *Wilson* that knock-and-announce was held to be a part of the reasonableness inquiry contemplated under the Fourth Amendment. The Court again addressed the knock-and-announce principle in *Richards v. Wisconsin*, 520 U.S. 385, 117 S. Ct. 1416, 137 L.Ed.2d 615 (1997). The Court expanded its holding in *Wilson* and stated that police seeking to justify a "no-knock" entry must meet the following test:

> [T]he police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.

*Id.* at 394 (citations omitted). The Court chose the lower standard of reasonable suspicion rather than probable cause in order to strike a proper balance between the valid concerns of law enforcement officials who execute search warrants and the privacy interests of individuals who are affected by no-knock entries. *See id.* It cautioned that even though a knock-and-announce challenge involves a lower standard of proof, the police are required to show reasonable suspicion whenever the reasonableness of an unannounced entry is at issue. *See id.* The Court held that trial courts facing the issue of whether an unannounced entry is reasonable should apply the *Richards* test to the facts and circumstances of the particular entry to determine if the entry is justifiable.

■ Our supreme court later held in *Mazepink v. State* that the requirement for police to knock and announce is not merely perfunctory. *See Mazepink v. State*, 336 Ark. 171, 182-83, 987 S.W.2d 648, 653 (1999). However, the flexible rule of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests. *Richards v. Wisconsin, supra* (citing *Wilson, supra*).

■ It is the duty of a court confronted with the question to determine whether the facts and circumstances of a particular entry justified dispensing with the knock-and-announce requirement. *Id.* We will not reverse that finding unless it is clearly against the preponderance of the evidence. *Thompson v. State,* 42 Ark. App. 254, 856 S.W.2d 319 (1993).

■ Appellant initially argues that the warrant was facially invalid because the warrant did not include the judge's approval of dispensing with the knock-and-announce rule requested in the affidavit. We disagree. The State points out that in order to conduct a no-knock search, it is not necessary that the search warrant specifically dispense with the knock-and-announce requirement because the reasonableness of the officers' decision to make a no-knock entry may be evaluated at the time of the entry. *See Foster v. State,* 66 Ark. App. 183, 991 S.W.2d 135 (1999). We agree with the State that the failure to include this language in the warrant itself does not defeat the propriety of the search.

■■ The crux of the issue is whether the officers' belief that weapons were in the house justified their no-knock entry. Credibility determinations are left to the trial court. *See Campbell v. State,* 27 Ark. App. 82, 766 S.W.2d 940 (1989). The trial judge apparently believed the officers over Weatherly, a convicted felon. Knowledge of weapons in the residence to be searched has been held to justify execution of a no-knock warrant. *See Foster v. State, supra.* However, appellant successfully distinguishes these facts from those in *Foster.* The search warrant in *Foster* was premised upon the officers' personal knowledge of guns being in the Foster residence within "days" of the application for a warrant. Appellant argues that the information in the present appeal was stale as to the presence of a handgun, and we agree. The trial court's decision to the contrary is clearly against the preponderance of the evidence.

■ The evidence, at its strongest, suggested that Weatherly saw a gun at the house on two occasions, most recently two weeks before the day his car was stopped. Weatherly gave no indication that a gun was present, however, when he was in the house on the day just prior to the request for a search warrant and its execution. While we cannot discern how many days elapsed between the sighting of guns and the no-knock entry in *Foster,* we hold that merely seeing a handgun at a residence two weeks earlier is too remote in time to predicate a fear that such handgun will continue to be present and endanger officers, absent any other compelling facts to suggest otherwise.

■ After reviewing the totality of the circumstances, we hold that the trial court erred when it denied appellant's motion to suppress. Therefore, we reverse and remand.

CRABTREE and ROAF, JJ., agree.