Kisha ILO *v.* STATE of Arkansas

CR 02-274 85 S.W.3d 542

Supreme Court of Arkansas
Opinion delivered September 26, 2002

*Bill Luppen*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

D ONALD L. CORBIN, Justice. Appellant Kisha Ilo was charged in the Faulkner County Circuit Court with possession of a controlled substance (marijuana) with intent to deliver, possession of drug paraphernalia, and maintaining a drug premises. Her charges were the result of a search warrant executed on her home in Conway. She filed a motion to suppress the evidence on the ground that the police violated her constitutional rights by failing to knock and announce their presence prior to forcibly entering the residence. The trial court denied the motion to suppress. Thereafter, Appellant entered conditional guilty pleas, pursuant to Ark. R. Crim. P. 24.3(b), and was sentenced to six years' imprisonment on each of the charges. She appealed the suppression issue to the Arkansas Court of Appeals, and it reversed the trial court's ruling. *See Ilo v. State*, 76 Ark. App. 516, 69 S.W.3d 55 (2002). The State petitioned for review of that decision, and we granted the petition pursuant to Ark. Sup. Ct. R. 1-2(e). For the reasons outlined below, we affirm the trial court's denial of suppression.

The record reflects that a search warrant was obtained on Appellant's residence at 1906 Dave Ward Drive in Conway on January 19, 2000. It was executed that same date. The affidavit in

support of the search warrant, filed by Investigator William Tapley of the Conway Police Department, set out the grounds for probable cause to believe that Appellant and her husband were engaged in ongoing sales of marijuana from their residence. The affidavit reflected that Tapley had conducted surveillance on the residence on several occasions over a period of approximately six weeks. During that time, Tapley observed heavy traffic coming to the residence for short periods of time. Many of the visitors would enter the residence and stay for only two or three minutes and then depart. On some of the occasions, only the passenger would enter the residence, while the driver waited in the car. From his training and experience as a narcotics investigator, Tapley recognized this type of traffic pattern as being consistent with the sale of narcotics.

On one occasion, about one month prior to obtaining the search warrant, Tapley approached the home to talk to the residents. While at the door, he smelled the distinct odor of burning marijuana coming from inside the residence. On another occasion, the day before he obtained the search warrant, Tapley and another Conway police officer, Investigator Tommy Balentine, observed two persons in a vehicle stop at the residence, enter the residence for approximately three minutes, and then leave. Thereafter, another Conway police officer stopped the vehicle for a motor-vehicle equipment violation. During the traffic stop, the occupants consented to a search of the vehicle, which revealed approximately one-quarter pound of marijuana. One of the occupants of the vehicle, George Weatherly, told the officers that he had been buying marijuana from the residence for approximately one year and that he had seen a handgun at the residence during the drug transactions on at least two occasions and as recently as two weeks ago. Based on this information, the officers sought and obtained a search warrant on Appellant's home.

Both the affidavit and the warrant were prepared by the Conway Police Department. The affidavit contained a request to dispense with the requirement that the officers knock and announce their presence before entering. That request was based on the information supplied by Weatherly about the presence of a handgun inside the residence. The warrant itself, however, did not

contain a no-knock provision. According to Tapley's later testimony, the issuing magistrate approved the no-knock entry. He explained that the omission of a no-knock provision from the face of the search warrant was due to a clerical oversight on the police department's part.

During the hearing below, Appellant challenged the veracity of the information concerning the firearm. Appellant presented testimony from Weatherly, who denied ever having told the officers that he had seen a firearm inside the residence during his past drug transactions. He further denied ever seeing any firearm inside Appellant's residence. Tapley and Balentine, however, maintained that Weatherly had supplied such information. Both officers testified that they interviewed Weatherly on January 18, and that he admitted that he had been purchasing marijuana from Appellant's residence for about one year. In response to questions about the presence of firearms in the home, Weatherly told them that he had seen a handgun at the residence during his drug transactions on at least two occasions, the most recent being two weeks earlier.

At the conclusion of the suppression hearing, the trial court granted Appellant's request to submit a brief on the suppression issue. In her post-hearing brief, Appellant argued for suppression of the evidence on the grounds that (1) the warrant itself did not provide for a no-knock entry; (2) there was no credible evidence from which the officers could deduce the presence of firearms on the premises; and (3) the alleged presence of a firearm two weeks earlier was too remote in time, or stale, to justify the no-knock entry. After receiving briefs from both sides, the trial court entered a written order denying the motion to suppress, based upon the testimony and the evidence presented at the hearing.

The court of appeals reversed the trial court's ruling on the ground that the evidence of the presence of a firearm in the home two weeks earlier was stale. Accordingly, the court of appeals concluded that such stale information did not amount to a reasonable suspicion that knocking and announcing under the particular circumstances would be dangerous. The court of appeals thus held "that merely seeing a handgun at a residence two weeks

earlier is too remote in time to predicate a fear that such handgun will continue to be present and endanger officers, absent any other compelling facts to suggest otherwise." *Ilo*, 76 Ark. App. at 521, 69 S.W.3d at 59. We granted the State's petition for review of that decision. When we grant review following a decision by the court of appeals, we review the case as though it had been originally filed with this court. *See Hughes v. State*, 347 Ark. 696, 66 S.W.3d 645 (2002); *Kennedy v. State*, 344 Ark. 433, 42 S.W.3d 407 (2001). We begin our analysis of the issues on appeal by examining the relevant law regarding the use of no-knock entries.

 In *Wilson v. Arkansas*, 514 U.S. 927, 929 (1995), the Supreme Court established that the "common-law 'knock and announce' principle forms a part of the reasonableness inquiry under the Fourth Amendment." The Court observed that not every entry must be preceded by an announcement; rather, the Court stated that "[t]he Fourth Amendment's flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests." *Id.* at 934.

 Two years after *Wilson*, the Supreme Court revisited the knock-and-announce principle. In *Richards v. Wisconsin*, 520 U.S. 385 (1997), the Court established the following guidelines:

> In order to justify a "no-knock" entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence. This standard — as opposed to a probable-cause requirement — strikes the appropriate balance between the legitimate law enforcement concerns at issue in the execution of search warrants and the individual privacy interests affected by no-knock entries. This showing is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged.

*Id.* at 394-95 (citations omitted). The reasonableness of the officers' decision to enter without knocking and announcing their presence must be evaluated as of the time they entered the premises. *Id.* It is the duty of the courts to determine whether the facts

and circumstances of the particular entry justified dispensing with the knock-and-announce requirement. *Id.*

■■ Where the court determines that the police were not justified in conducting a no-knock entry because there were no exigent circumstances present, exclusion or suppression of the evidence obtained in the search is the appropriate remedy. *Mazepink v. State*, 336 Ark. 171, 987 S.W.2d 648, *cert. denied*, 528 U.S. 927 (1999). Upon review of a trial court's denial of a motion to suppress evidence, we make an independent determination based on the totality of the circumstances, viewing the evidence in a light most favorable to the State, and we reverse only if the trial court's ruling was clearly against the preponderance of the evidence. *Id.* With this standard in mind, we turn to the merits of Appellant's arguments.

■ For her first point, Appellant argues that the trial court erred in refusing to suppress the evidence because the search warrant did not specifically authorize a no-knock entry. We agree with the court of appeals that a search warrant need not contain a specific provision dispensing with the requirement to knock and announce because the reasonableness of the officers' decision to make a no-knock entry must be evaluated as of the time that the warrant is executed. The Supreme Court addressed this issue directly in *Richards*, 520 U.S. 385. There, the officers specifically asked for a provision that would have given them permission to execute a no-knock entry. The magistrate refused to include such a provision in the warrant. The magistrate's refusal, however, did not end the inquiry, as the Court held that the reasonableness of the officers' ·decision to conduct a no-knock entry "must be evaluated as of the time they entered [the premises]." *Id.* at 395. *See also Foster v. State*, 66 Ark. App. 183, 991 S.W.2d 135 (1999). Thus, even if the warrant had contained a provision authorizing the officers to conduct a no-knock entry, the judicial review would be the same, *i.e.*, whether the information known to the police created a reasonable suspicion that knocking and announcing their presence would be dangerous. Accordingly, we agree with the State and the court of appeals that the failure to include this language in the warrant is not fatal.

 For her second point, Appellant argues that the trial court erred in denying suppression because there was no credible evidence that a firearm had been seen on the premises. She bases this argument on Weatherly's testimony that he had never seen any firearms at the residence and that he never told the police otherwise. We reject this argument because this court has repeatedly held that issues regarding the credibility of witnesses testifying at a suppression hearing are within the province of the trial court. *See, e.g., Cook v. State,* 345 Ark. 264, 45 S.W.3d 820 (2001); *Branscum v. State,* 345 Ark. 21, 43 S.W.3d 148 (2001); *Wright v. State,* 335 Ark. 395, 983 S.W.2d 397 (1998). Any conflicts in the testimony are for the trial judge to resolve, as it is in a superior position to determine the credibility of the witnesses. *Cook,* 345 Ark. 264, 45 S.W.3d 820; *Riggs v. State,* 339 Ark. 111, 3 S.W.3d 305 (1999). Obviously, in denying the motion to suppress, the trial judge believed the testimony of the two officers over that offered by Weatherly. It was within his province to do so.

For her final argument, Appellant argues that the information known by the officers regarding the presence of a handgun at Appellant's residence is too stale to amount to the reasonable suspicion required under *Richards.* The court of appeals agreed with Appellant that the fact that a handgun was seen at the residence two weeks ago was too stale or too remote in time to support the officers' reasonable suspicion of danger.

The State, on the other hand, contends that the affidavit contained facts demonstrating reasonable suspicion that would justify a no-knock entry. The State asserts that the court of appeals was viewing the issue too narrowly. Specifically, the State argues that the evidence of the firearm's presence two weeks earlier must be viewed together with the evidence that Weatherly saw a handgun on two separate occasions over the course of a year. The State asserts that the totality of the evidence demonstrates an ongoing threat of potential danger. We agree with the State's analysis.

Both this court and the court of appeals have addressed the issue of staleness as it relates to the determination of probable cause to obtain a search warrant and as it relates to the diminish-

ment of probable cause resulting from a delay in the execution of a search warrant. *See, e.g., Gilbert v. State*, 341 Ark. 601, 19 S.W.3d 595 (2000); *White v. State*, 47 Ark. App. 127, 886 S.W.2d 876 (1994); *Cardozo & Paige v. State*, 7 Ark. App. 219, 646 S.W.2d 705 (1983). However, the issue of staleness of information that forms the basis for a no-knock entry is an issue of first impression in Arkansas. Even beyond Arkansas, this issue has received little attention. As such, we begin our analysis by reviewing the general principles concerning the staleness of information used to form probable cause.

There is no clear-cut test for determining when information has become stale. *United States v. Smith*, 266 F.3d 902 (8th Cir. 2001). Rather, the timeliness of the information depends on the circumstances of the case, including the nature of the unlawful activity. *Id.*; *United States v. Johnson*, 461 F.2d 285 (10th Cir. 1972). Moreover, the timeliness of the information is not considered separately; rather, "the length of the delay is considered together with the nature of the unlawful activity and in the light of common sense." *Gilbert*, 341 Ark. at 605, 19 S.W.3d at 598 (quoting *White*, 47 Ark. App. at 134, 886 S.W.2d at 881 (citing *Cardozo & Paige*, 7 Ark. App. 219, 646 S.W.2d 705)). The following guidelines have been quoted often:

> The ultimate criterion in determining the degree of evaporation of probable cause, however, is not case law but reason. *The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock*: The character of the crime (chance encounter in the night or regenerating conspiracy?), of the criminal (nomadic or entrenched?), of the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), of the place to be searched (mere criminal forum of convenience or secure operational base?), etc.

*Id.* at 606, 19 S.W.3d at 598 (emphasis added) (quoting *Cardozo & Paige*, 7 Ark. App. at 222, 646 S.W.2d at 707 (quoting *State v. Loucheim*, 296 N.C. 314, 323, 250 S.E.2d 630, 636 (N.C. 1979) (quoting *Andresen v. Maryland*, 24 Md. App. 128, 172, 331 A.2d 78, 106 (1975)))). Thus, probable cause cannot be quantified by merely counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit; rather, time

factors must be examined within the context of a specific case and the nature of the crime being investigated. *United States v. Maxim*, 55 F.3d 394, 397 (8th Cir.), *cert. denied*, 516 U.S. 903 (1995) (citing *United States v. Koelling*, 992 F.2d 817, 822 (8th Cir. 1993)).

 The significance of the nature of the activity was explained by the 10th Circuit in *Johnson*:

> Where the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time. *However, where the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant.*

461 F.2d at 287 (emphasis added). The crimes of selling narcotics and illegal liquor have been recognized as types of ongoing criminal activity that is considered protracted or continuous, thus establishing a course of conduct. *See United States v. Harris*, 403 U.S. 573 (1971) (in a footnote, rejecting a claim of staleness where informant reported purchasing liquor from defendant within the past two weeks and there was a history of purchases over the past two years); *Smith*, 266 F.3d 902 (refusing to suppress evidence resulting from warrant where affidavit showed ongoing narcotics sales on three separate occasions three months earlier); *Johnson*, 461 F.2d 285 (refusing to suppress evidence where affidavit showed numerous sales of illegal liquor over a four-month period, with the last reported occasion being three weeks before the search warrant was obtained). Similarly, the crime of illegal possession of firearms has been recognized as an ongoing activity or course of conduct. *See Maxim*, 55 F.3d 394 (holding that information four months old, or even three years old, may supply probable cause for a search warrant for illegally possessed firearms, because possession is a continuing offense and because firearm enthusiasts tend to keep their guns for long periods of time).

We are only aware of two appellate decisions that have touched upon the issue of staleness within the context of no-knock entries. In *United States v. Stewart*, 867 F.2d 581 (10th Cir. 1989), the appellate court noted that the officers were in possession of only two specific facts regarding the defendant that were relevant to the execution of the warrant. One of those facts was

that the defendant had been seen on one occasion with a pistol. The court held that this fact alone did not justify a no-knock entry. In a conclusory fashion, the court reasoned: "The information was stale and involved only one incident. The officer had no information that would have led them to believe that the defendant armed himself on a regular basis." *Id.* at 585.

The other case is *State v. George*, 687 A.2d 958 (Maine 1997). Although the issue of staleness was not specifically discussed, the Supreme Court of Maine upheld a no-knock entry where the officers had information that the defendant had possessed a firearm two weeks prior to the entry. The court held that under the totality of the circumstances, which included the fact that the defendant's residence was near a public school, the forced entry by the police was reasonable.

Here, the affidavit submitted by Investigator Tapley undisputedly demonstrates that ongoing drug sales were being conducted out of Appellant's residence. George Weatherly told officers that he had been buying marijuana at the residence for about one year. During *at least* two of those drug transactions, Weatherly observed a handgun present at the residence. The most recent sighting of the handgun was two weeks prior to the search. We agree with the State that Weatherly's statements demonstrate that the occupants of Appellant's home had a history of conducting drug transactions with a firearm present during those transactions. As such, the officers' suspicions that the firearm would be present when they executed the warrant were reasonable.

Furthermore, the determination of reasonable suspicion cannot be made in a vacuum. The officers making that decision will undoubtedly view the facts through their experience as police officers, using their training and common sense. Thus, so long as there are particular facts, not just generalizations, demonstrating that an announced entry would be dangerous to the officers or others, the police are entitled to view those particular facts within the parameters of their experience and common sense. "[P]olice officers need not ignore the insights gleaned from their experience on the beat. Such general insights — back-

ground facts — when combined with particularized facts can form the basis for reasonable suspicion," *United States v. Grogins*, 163 F.3d 795, 798 (4th Cir. 1998). Under the totality of circumstances present in this case, we cannot say that the trial court erred in denying the motion to suppress on the ground of staleness.

Finally, although we affirm the trial court's denial of the motion to suppress based on the arguments before us, we are compelled to note that the vast majority of cases considering this issue have held that the mere presence of firearms on the premises, standing alone, is not sufficient to justify dispensing with the knock-and-announce requirement of the Fourth Amendment. *See, e.g., Grogins*, 163 F.3d 795; *United States v. Moore*, 91 F.3d 96 (10th Cir. 1996); *United States v. Bates*, 84 F.3d 790 (6th Cir. 1996); *United States v. Lucht*, 18 F.3d 541 (8th Cir.) *cert. denied*, 513 U.S. 949 (1994); *United States v. Marts*, 986 F.2d 1216 (8th Cir. 1993); *Stewart*, 867 F.2d 581. We do not discuss whether there was other sufficient evidence to justify the no-knock entry in this case, because this specific issue was not raised below, nor is it argued on appeal.

The record reflects that Appellant's argument below was confined to the issue of the timeliness of the information about the presence of the firearm at her residence. Appellant did not argue below, nor even on appeal, that the threat posed to officers was invalid because the mere presence of a firearm on the premises, no matter how recent, is insufficient to justify a no-knock entry. In other words, Appellant challenged only the remoteness of the evidence, *i.e.*, that there was no indication that the gun would still be there when they executed the search warrant. We do not view this as encompassing the argument that the threat of officer safety was not valid because there was no evidence that the occupants of the residence would use a gun against the officers. We will not reverse a trial court's suppression ruling based on an argument that was never raised or otherwise developed during the hearing below. "It is well settled that where an appellant does not advance an argument to the trial court as part of the motion to suppress, we will not consider it for the first time on appeal." *Bunch v. State*, 346 Ark. 33, 42, 57 S.W.3d 124, 129 (2001) (citing *McFerrin v. State*, 344 Ark. 671, 42 S.W.3d 529

(2000)); *Stephens v. State*, 342 Ark. 151, 28 S.W.3d 260 (2000), *cert. denied*, 531 U.S. 1199 (2001).

 Moreover, this court will not make an appellant's argument for him, nor raise an issue *sua sponte* unless it involves the jurisdiction of this court to hear the case. *See Shields v. State*, 281 Ark. 420, 664 S.W.2d 866 (1984) (holding that although this court was not persuaded that the trial court properly admitted expert testimony, it would not address the issue because it was not raised on appeal). *See also Phillips v. Earngey*, 321 Ark. 476, 481, 902 S.W.2d 782, 785 (1995) (holding that "[i]t is axiomatic that we refrain from addressing issues not raised on appeal"). Such an exception is not present here. Accordingly, we will not address this issue.

Circuit court affirmed; court of appeals reversed.