2010 Ark. App. 410

**Tracy INGLE, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 09–848.**

Court of Appeals of Arkansas.

May 12, 2010.

David O. Bowden, Little Rock, for appellant.

Dustin McDaniel, Atty. Gen., Vada Berger, Asst. Atty. Gen., for appellee.

ROBERT J. GLADWIN, Judge.

Tracy Lee Ingle appeals his April 15, 2009 conviction in Pulaski County Circuit Court of two counts of aggravated assault, one count of possession of drug paraphernalia, and one count of maintaining a drug premises. He was sentenced to eighteen years' imprisonment. On appeal, Ingle contends that there was no substantial evidence to support the counts involving drug paraphernalia and maintaining a drug premises; that the affidavit supporting the warrant was inadequate and conclusory; that there was no probable cause to search the vehicle found on the premises; and that the probable cause supporting the search warrant had evaporated by the time the search was actually conducted. We affirm.

### Statement of Facts

The North Little Rock Police Department (NLRPD) was told by a confidential informant (CI) that 400 E. 21st Street was being used as a drug-selling premises. The following facts are contained in the warrant request prepared by Officer Franks, the investigating officer: Franks received information regarding possible drug activity at the residence. He met with a CI on December 7, 2007, who was searched, and neither drugs nor money were found on him. Franks gave the CI money to purchase the drugs. The CI was escorted to the area and, while under surveillance, was observed entering the front door. The CI was observed leaving the front door, and he traveled directly to and met with Franks. The CI gave Franks a quantity of methamphetamine, which he claimed to have bought from Kate. Franks again searched the CI and found no drugs or money. The substance that was bought tested positive for methamphetamine. Franks was told by the CI that Kate was almost always armed with a gun. The premises was located at the end of a dead-end street with large open areas surrounding it. Approaching the residence in daylight would most likely present a higher-than-normal hazard to officers and citizens.

Franks claimed that the premises could not be safely approached in daylight and asked that the warrant be executed anytime day or night. He asserted that knocking and announcing police presence would be dangerous, futile, or would inhibit the investigation by endangering the lives of officers. He claimed that reasonable suspicion existed based on the fact that Kate is known to carry a gun. Based on his experience, Franks stated that it is the practice of illegal-narcotics dealers to keep additional quantities of illegal controlled substances, records, proceeds, and other items relating to the sale and distribution of illegal controlled substances in their houses. He said that he had learned that paraphernalia associated with the use, packaging, and weighing of illegal narcotics is frequently found at the same locations at which the narcotics themselves are stored and sold. He stated that he had also learned that propaganda associated with criminal gangs, organizations, and/or enterprises is frequently found at

the same locations at which narcotics themselves are stored.

Based upon this affidavit, a search warrant was issued for the premises and curtilage area for anytime day or night without knocking or announcing. The affidavit and warrant were issued on December 21, 2007. Subsequently, it was developed that "Kate" was an alias for Sandra Melby, who was arrested in a separate investigation conducted by the Drug Enforcement Agency (DEA). To protect the CI, the police delayed serving the search warrant.

On January 7, 2008, the NLRPD SWAT team executed the search warrant in the late afternoon. SWAT broke into two teams, with the majority of the team going in the front door, and two officers entering a side bedroom window. Ingle was asleep in the bedroom. When the officers broke out the window, and as they tried to enter, they saw Ingle sitting up in his bed and pointing a Lorcin nine-millimeter pistol toward the window. The SWAT team opened fire, expending at least ten rounds. Ingle was severely wounded and taken to the hospital for medical treatment. Two other apparent weapons, a pellet gun and a paint ball gun, were also present. Drug paraphernalia and a police scanner radio set to the SWAT-team frequency were also found.

A search warrant for the house and the vehicle, based upon the shooting, was issued pursuant to an affidavit of January 7, 2008, which stated that police had executed the first warrant and, when officers broke open the window as part of locking down and securing the rooms, gunfire erupted and an unidentified white male who was in the bedroom was shot. He was transported to the hospital by ambulance, and the home was secured until a search warrant could be obtained. The warrant was issued for the house, the van, and the Jeep Cherokee parked outside.

Ingle was charged with the four counts previously listed. Before trial, he filed a motion to suppress, arguing that the December 21, 2007 affidavit failed to show probable cause for search of his house and car. He claimed there was no nexus between Sandra Melby and the premises or the car. Also, he argued that any possible probable cause dissipated between the issuance of the warrant on December 21, 2007, and the execution on January 7, 2008. He argued that the good-faith exception did not apply because the affidavit was "bare bones" on nexus, Melby's purported connection to the premises and car was not shown, and the unreasonableness of the delay in execution made it stale. Finally, he argued that the affidavit was conclusory on the statement that Melby is "almost always armed" and there was no adequate showing of the informant's alleged basis of knowledge for dispensing with "knock and announce."

The motion to suppress was denied. After testimony was taken and the State rested its case, Ingle moved for a directed verdict as to the drug-paraphernalia and maintaining-a-drug-premises charges, arguing that the State was unable "to connect those [Counts III and IV] to Mr. Ingle directly." Defense counsel made the following argument:

> I ask[ed] the witnesses who this stuff belonged to. They said they have no idea. They were in the house. They were not directly connected with him. Somebody else had access to the house and the ability to leave them there and that was Sandra Melby.

The trial court denied the motion at this point and again after it was renewed at the close of all evidence. After trial, Ingle was found guilty on the four counts as listed above and sentenced to eighteen years' imprisonment. A timely notice of appeal was filed, and this appeal followed.

## Sufficiency of the Evidence

■ This court treats a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Coggin v. State*, 356 Ark. 424, 156 S.W.3d 712 (2004). The appellate court reviews the evidence in the light most favorable to the State and considers only the evidence that supports the verdict. *Stone v. State*, 348 Ark. 661, 74 S.W.3d 591 (2002). This court affirms a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is evidence—either direct or circumstantial—that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Haynes v. State*, 346 Ark. 388, 58 S.W.3d 336 (2001).

■ Circumstantial evidence may constitute substantial evidence to support a conviction. *Ross v. State*, 346 Ark. 225, 57 S.W.3d 152 (2001). The longstanding rule in the use of circumstantial evidence is that, to be substantial, the evidence must exclude every other reasonable hypothesis than that of the guilt of the accused. *Id.* The question of whether the circumstantial evidence excludes every other reasonable hypothesis consistent with innocence is for the jury to decide. *Id.* Upon review, this court must determine whether the jury resorted to speculation and conjecture in reaching its verdict. *Id.*

Ingle argues that, assuming without admitting that there was probable cause to raid his house, there is no nexus showing that he was related to the drug activity reported by the CI at the time of the controlled buy. He contends that every search-warrant application must show a nexus between the premises and the object to be seized, or else there is no probable cause to search. He further argues that there was no nexus to the events of the shooting that gave rise to any search of the Jeep and this evidence should have been suppressed.

Ingle contends that the whole case was based on Melby, who sold drugs out of his house. Yet, he asserts that there was no proof at trial that this was a drug premises. He claims that the affidavit stated that the police knew this, but did not state how they knew beyond the word of the CI. He argues that there are no indicia of reliability for the CI, such as frequency of use and accuracy in past situations. He claims that, on the CI's word, a no-knock nighttime warrant was issued; that, once inside, police shot Ingle, who awoke to breaking glass and pulled a gun, which he kept for defense. He argues that no evidence was collected that showed he had anything to do with the drug paraphernalia. He also claims there was no showing that he had any interest in the house. He contends that the NLRPD did not do their job in investigating the house and only acted on the CI's buying one eightball from Melby, who may or may not have been armed.

■ Ingle's argument—that the evidence failed to prove that his residence was a drug premises—is not preserved for appellate review, as the specific claim was not raised in his motion for a directed verdict. *Ray v. State*, 2009 Ark. 521, 357 S.W.3d 872. Arguments made in support of a sufficiency-of-the-evidence challenge that were not made in support of a motion for directed verdict at trial are not preserved for appeal. *See, e.g., Rounsaville v. State*, 372 Ark. 252, 273 S.W.3d 486 (2008); *Phillips v. State*, 361 Ark. 1, 203 S.W.3d 630 (2005). It is well settled that arguments not raised at trial will not be addressed for the first time on appeal. *See, e.g., Campbell v. State*, 319 Ark. 332, 891 S.W.2d 55 (1995). We further point to Ingle's failure to cite any authority con-

cerning what the prosecution was required, or failed, to prove in this case. *See, e.g., Smith v. State,* 326 Ark. 520, 932 S.W.2d 753 (1996) (refusing to address argument unsupported by authority).

### Motion to Suppress

 Our standard of review for a trial court's decision to grant or deny a motion to suppress requires us to make an independent determination based on the totality of the circumstances, to review findings of historical fact for clear error, and to determine whether those facts give rise to reasonable suspicion or probable cause. *Simmons v. State,* 2009 Ark. App. 705, 2009 WL 3460715. Our review of probable cause for the issuance of a warrant is confined to the information contained in the affidavit. *See id.* Arkansas Rule of Criminal Procedure 13.1 (2009) sets forth the requirements for the issuance of a warrant, and it requires in subsection (b) that "[t]he application for a search warrant shall describe with particularity the persons or places to be searched and the persons or things to be seized[.]" Rule 13.2 sets forth the contents of a search warrant, and it requires in subsection (b) that it describe with particularity the things that are the object of the search. Ark. R.Crim. P. 13.2 (2009). Our supreme court held in *George v. State,* 358 Ark. 269, 189 S.W.3d 28 (2004), that a particular description of the objects of search in the affidavit was sufficient to meet that requirement. In deciding whether a particular description is sufficient, reviewing courts must use common sense and not subject the description to hypercritical review. *See Beshears v. State,* 320 Ark. 573, 898 S.W.2d 49 (1995).

*1. Affidavit supporting the search warrant*

 Ingle reiterates that there must be sufficient information in the affidavit, including the veracity of a CI and a basis of knowledge for anyone supplying hearsay information. The magistrate has to assess the probability of contraband or evidence of a crime being located in a particular place based on the evidence. *See* Ark. R.Crim. P. 13.1(b). This rule requires a connection between criminal activity and the items to be seized or the places to be searched. Ingle argues that the affidavit here has nothing in it other than conclusory statements about what a CI of unknown reliability has said. There is no connection between Ingle and Kate and the premises or drugs. He contends that this court is required to take the NLRPD's word for investigations by the DEA. He claims that there was nothing to show the CI's reliability as an informant. He argues that the failure to show a basis of knowledge in the informant's claim is absolutely fatal.

 Before a search warrant may issue, an affidavit or recorded testimony is required "particularly setting forth the facts and circumstances tending to show that ... things are in the places ... to be searched." Ark. R.Crim. P. 13.1(b). There must be "probable cause to believe that the place to be searched contains evidence of the crime." *Yancey v. State,* 345 Ark. 103, 117, 44 S.W.3d 315, 324 (2001); *Nance v. State,* 323 Ark. 583, 596, 918 S.W.2d 114, 120 (1996) (citing *Johnson v. State,* 270 Ark. 247, 604 S.W.2d 927 (1980)).

The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that specific things to be searched for and seized are located on the property to which entry is sought. *Zurcher v. Stanford Daily,* 436 U.S. 547, 98 S.Ct. 1970 [56 L.Ed.2d 525] (1978). *Accord Illinois v. Gates* [462 U.S. 213, 238, 103 S.Ct. 2317,

76 L.Ed.2d 527 (1983) ], (a fair probability that contraband or evidence of a crime will be found in a particular place). *See also United States v. Malin,* 908 F.2d 163 (7th Cir.1990). The affidavit must provide facts by direct or circumstantial evidence that there is reasonable cause to believe the specific things sought are located on the property to which entry is sought.

*Yancey,* 345 Ark. at 116, 44 S.W.3d at 323. Rule 13.1(b) concludes by stating that

[f]ailure of the affidavit or testimony to establish the veracity and bases of knowledge of persons providing information to the affiant shall not require that the application be denied, if the affidavit or testimony viewed as a whole, provides a substantial basis for a finding of reasonable cause to believe that things subject to seizure will be found in a particular place.

The State contends, and we agree, that any failure to establish the CI's reliability or basis of knowledge is not a fatal defect to this warrant under Rule 13.1(b). The affidavit established probable cause to search the premises because it recited the affiant's monitoring of the CI's controlled buy of methamphetamine there on December 20, 2007. *See Morgan v. State,* 2009 Ark. 257, 308 S.W.3d 147.

*2. Probable cause to search the Jeep*

▌ Ingle argues there was nothing said about any car in the original search-warrant application. He contends that there was no showing that the car was connected to Melby. He argues that the State's probable cause was that the SWAT team had shot Ingle and that there might be some ammunition in the car that would fit the gun Ingle was using to repel home invaders.

The State contends that Ingle's claim—that there was no probable cause to search his Jeep—is not preserved for appellate review because he only challenged the search of the Jeep in passing in his motion to suppress and did not develop the argument, either in the memorandum in support or at the suppression hearing. However, assuming the argument is preserved, it is rejected because the Arkansas Supreme Court recently held that when a legitimate search is under way, and when its purpose and its limits have been precisely defined, police officers need not obtain a second warrant to search containers found during a premises search. *State v. Stites,* 2009 Ark. 154, 300 S.W.3d 103.

Further, the Eighth Circuit Court of Appeals has held that a vehicle not mentioned in a warrant, but located within the warranted premises, is subject to being searched for items that the warrant authorized to be seized. *United States v. Gamboa,* 439 F.3d 796 (8th Cir.2006). The original warrant authorized the search of the Jeep because it included the address and the curtilage. The Jeep, which Ingle admitted belonged to him, was parked at the residence. Therefore, we hold that it was permissible for police to search the Jeep pursuant to the original warrant, even if the affidavit did not separately establish probable cause for search of the Jeep, because the Jeep was reasonably thought to contain the objects of the search—evidence of drugs and drug dealing.

*3. Staleness of search warrant*

Even though Arkansas Rule of Criminal Procedure 13.2(c) provides that a warrant must be executed in no more than sixty days, there is a "within a reasonable time" element. Ingle claims that the State interprets the rule to mean that it has at least sixty days. Ingle asserts that this is not true. He contends that sixty days is the outer limit, and that the inner limit is "within a reasonable time." He maintains

that delay in serving a warrant may cause the information to go stale and probable cause to be diminished. *See White v. State,* 47 Ark. App. 127, 886 S.W.2d 876 (1994).

Ingle cites *Ilo v. State,* 76 Ark. App. 516, 69 S.W.3d 55 (2002), where a nighttime, no-knock warrant was obtained based on an informant's seeing a gun on the premises to be searched two weeks before the affidavit for search warrant was submitted. The trial court denied the defendant's motion to suppress, and this court reversed, holding that the informant's seeing a handgun at a residence two weeks earlier was too remote in time to predicate a fear that such handgun would continue to be present and endanger officers, absent any other compelling facts to suggest otherwise. *Id.* at 521, 69 S.W.3d at 59. However, the Arkansas Supreme Court reversed this court in *Ilo v. State,* 350 Ark. 138, 85 S.W.3d 542 (2002), upholding the trial court's denial of the motion to suppress. The supreme court held that the information known by officers that was contained in the affidavit for search warrant of the defendant's residence regarding the presence of a handgun at the residence was not too stale to amount to reasonable suspicion for justification of a no-knock entry. *Id.*

Ingle points out that the Arkansas Supreme Court noted in *Ilo* that most courts have held that the mere presence of a firearm on the premises, standing alone, is not sufficient cause to dispense with the knock-and-announce requirement of the Fourth Amendment. *Id.* at 151, 85 S.W.3d at 550. The *Ilo* court did not address this specific issue because it was not raised below. *Id.* Ingle claims that he raised this issue at the suppression hearing, and that in contrast to *Ilo,* the CI here is an unknown person of unknown credibility who did not testify at the suppression hearing.

Further, the information he gave was that Melby was usually armed. Ingle contends that the warrant gives no statement of what nexus Melby had with the premises. He further claims that probable cause was diminished due to the delay in the execution of the warrant.

The Arkansas Supreme Court stated in *Ilo* as follows:

There is no clear-cut test for determining when information has become stale. Rather, the timeliness of the information depends on the circumstances of the case, including the nature of the unlawful activity. Moreover, the timeliness of the information is not considered separately; rather, "the length of the delay is considered together with the nature of the unlawful activity and in the light of common sense." The following guidelines have been quoted often:

The ultimate criterion in determining the degree of evaporation of probable cause, however, is not case law but reason. The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock: The character of the crime (chance encounter in the night or regenerating conspiracy?), of the criminal (nomadic or entrenched?), of the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), of the place to be searched (mere criminal forum of convenience or secure operational base?), etc.

Thus, probable cause cannot be quantified by merely counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit; rather, time factors must be examined within the context of a specific case and the nature of the crime being investigated.

*Ilo* at 148–49, 85 S.W.3d at 548–49 (citations omitted). A court can look to information outside the affidavit, such as what officers learned after the warrant issued. *See Gilbert v. State,* 341 Ark. 601, 19 S.W.3d 595 (2000).

We hold, therefore, that the totality of the circumstances establishes that the warrant here was not stale when it was executed. It was executed seventeen days after it was issued, and eighteen days after a controlled buy occurred at the premises. Further, even though it was not included in the affidavit, the CI told the affiant that the residence "was one of his regular stops and that he had bought drugs there many times[.]" Therefore, it was not error for the circuit court to determine that the warrant was timely executed two-and-one-half weeks after its issuance, given evidence of the controlled buy and of other drug purchases occurring over a period of time.

### 4. Good faith

In *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court established an exception to the exclusionary rule, which disallows evidence obtained by an invalid search warrant, when that search warrant is relied upon in good faith by officers enforcing it. Ingle claims that the *Leon* exception is of no aid to the State because the issuing magistrate acted as a "rubber stamp" for police, and the affidavit did not provide the magistrate with sufficient evidence to make an independent evaluation. He contends that the affidavit was conclusory and that the magistrate did not examine the information closely. He points out that the original warrant was for "crack cocaine" but was subsequently changed by hand to "methamphetamine." He claims that this is a clear indication that there was no searching inquiry into the crime. Further, he claims that *Leon* does not deal with flaws in the execution of a warrant and does not touch the issue of staleness.

In contrast, the State claims that the officers acted in good faith when executing the warrant. The exclusionary rule does not bar the use of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a magistrate, even if the warrant is invalid due to lack of probable cause. *E.g., Moya v. State,* 335 Ark. 193, 981 S.W.2d 521 (1998). This court looks to the totality of the circumstances in assessing good-faith reliance on a warrant lacking in probable cause, including what the affiant knew, but did not communicate to the judge. *Id.* The State asserts that the CI's report of numerous drug sales, coupled with the controlled buy, provided officers with an objectively reasonable basis to conclude that there was probable cause for issuance of the warrant. The State contends that it was objectively reasonable for officers to believe that execution of the warrant seventeen days after its issuance complied with the law and that it was objectively reasonable for them to assume that a warrant authorizing the search of premises and curtilage authorized them to search containers on that premises or curtilage that could contain the objects of the search. We agree with the State's contentions. Accordingly, based upon the totality of the circumstances herein, we affirm.

Affirmed.

HENRY and BROWN, JJ., agree.