2010 Ark. 389

**John WAGNER, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 10–372.**

Supreme Court of Arkansas.

Oct. 21, 2010.

Rehearing Denied Dec. 2, 2010.

Daniel G. Ritchey, Blytheville, for appellant.

Dustin McDaniel, Att'y Gen., by: Karen Virginia Wallace, Ass't Att'y Gen., for appellee.

JIM GUNTER, Justice.

Appellant John Wagner appeals to this court following the entry of a conditional plea of guilty. We granted the State's motion to certify this case because the case presents an issue of first impression concerning statutory and rule interpretation and possibly requires the overruling of precedent. Therefore, our jurisdiction is pursuant to Rule 1–2(b)(1), (5), (6) of the Rules of the Arkansas Supreme Court.

On appeal, appellant contends (1) that the circuit court erred in denying his motion to suppress because the affidavit used to secure a search warrant of appellant's home lacked sufficient proof of probable cause; (2) that the circuit court erred in denying his motion to suppress because the district court judge who issued the search warrant was without jurisdiction to do so; and (3) that the circuit court erred in denying his motion to compel the State to reveal the identities of two confidential informants who provided information in the affidavit to secure the search warrant. We affirm the circuit court's denial of appellant's motion to suppress and dismiss the appeal from the circuit court's denial of appellant's motion to compel as not proper under Rule 24.3(b) of the Arkansas Rules of Criminal Procedure.

On January 7, 2009, Sergeant Robert Ephlin presented an affidavit for a search warrant to District Judge Mike Gibson of the Mississippi County Osceola District Court. The affidavit stated, in pertinent part:

The undersigned affiant and Lt. Robb Rounsavall have been receiving information relating that John A. Wagner, AKA "Waco[,]" is involved in the distribution of cocaine, marijuana, and methamphetamine. The information has been received from several different sources including confidential informants, police officers, and Gosnell Public Safety Director Bobby Trump. The information has been received over the past two years.

During January 2008[,] I, along with Lt. Robb Rounsavall, met with a confidential informant who related that he/she could purchase methamphetamine from a subject he/she knows as "Waco" while inside his residence located in Gosnell. The informant stated that he/she has purchased methamphetamine from "Waco" on numerous occasions.

I am aware that "Waco" is John A. Wagner and that Wagner resides at 1011 South Airbase Highway in Gosnell. I am also aware that Wagner has a previous arrest for possession of a controlled substance with the intent to de-

liver out of Crittenden County Circuit Court, to the charge of possession of a controlled substance with the intent to deliver on January 29, 2007[,] and received 60 months probation. A copy of the judgment and disposition order has been made a part of this affidavit in Attachment B.

On February 8, 2008[,] I spoke with the confidential informant and arranged to meet and make a controlled purchase of methamphetamine from John Wagner ("Waco") while inside his residence. A plan was devised to purchase one ounce of methamphetamine from Wagner for one thousand two hundred dollars. The informant and his/her vehicle were searched for money and or drugs with negative results. The informant was provided with one thousand two hundred dollars in DTF buy money. The serial numbers of the buy money had been previously recorded. The informant was instructed on the procedure for making the purchase. The informant was equipped with a covert audio transmitter that allowed officers to monitor the conversation between the informant and "Waco." Officers conducted visual surveillance of "Waco[']s" residence and observed the informant arrive. Visual surveillance officers observed the informant speaking with "Waco" in the driveway while the conversation was monitored using the covert audio transmitter. Officer heard "Waco" tell the informant that he needed eight hundred dollars of the money up front and that he would then go get the methamphetamine and call the informant and tell him/her when it could be picked up. The informant had been told not to give the DTF buy money to "Waco" unless "Waco" supplied the methamphetamine at the same time. The informant told "Waco" he/she couldn't do that and left the residence. Officers debriefed the informant and learned that this was not an unusual occurrence. The informant stated "Waco" is a very careful individual and often changes his routine. The informant also related the security door installed on the front of "Waco's" residence is always locked. The informant related that it is a heavy steel security door.

During December 2008[,] Lt. Robb Rounsavall spoke with a reliable confidential informant who related that "Waco" is involved in the distribution of methamphetamine and cocaine from his residence located on South Airbase Highway in Gosnell. The informant stated he/she has been present inside the residence and observed large amounts of cocaine and methamphetamine being packaged for sale. The informant stated "Waco" hides the packages in flower pots and other containers around the inside and outside of his residence. The informant stated "Waco" also routinely changes his method of dealing with customers. The informant also related "Waco" stores some amounts of the drugs at the residence next door. The informant stated the residence is occupied by Jeremiah Knott and that "Waco" pays Knott to store and sometimes deliver the drugs. The informant stated Knott drives a green, extended cab, Chevrolet Pickup. The informant related that he/she has been inside both residences within the last week and observed amounts of cocaine and methamphetamine. The informant also stated he/she has witnessed "Waco" engage in several drug transactions while inside both residences during that time. This informant has provided information to me and Lt. Rounsavall over the [past] two years and that informant has resulted in the arrest and prosecution of more than five individuals.

On January 5, 2009[,] Lt. Robb Rounsavall received a call from an anonymous

source relating that "Waco" and Jeremiah Knott are involved in the distributing of cocaine and methamphetamine from their residences located on Airbase Highway in Gosnell. The caller stated that Knott transports and stores the drugs for "Waco." The caller stated that Knott lives next door to "Waco" and stores most of "Waco's" drugs in and around his residence. The caller stated "Waco" stores the money from the sale of the drugs inside his residence and that it is hid in several places throughout the residence.

Based on the contents of the affidavit, Judge Gibson issued a search warrant for appellant's home located in the Chickasawba District of Mississippi County. The warrant was executed and contraband and controlled substances were found. On February 25, 2009, the State filed a criminal information against appellant charging him with possession of methamphetamine with intent to deliver, possession of marijuana with intent to deliver, possession of MDMA, possession of drug paraphernalia, simultaneous possession of drugs and a firearm, and felon in possession of a firearm.

Appellant filed a motion to suppress the evidence found during the search, arguing that the affidavit upon which the warrant was issued failed to establish probable cause for the search. Appellant also filed a motion to compel the State to reveal the identity of the confidential informants named in the affidavit. Appellant next filed a supplemental motion to suppress asserting that the affidavit for the search warrant failed to provide sufficient timely facts from which a neutral magistrate could make a finding of probable cause. Appellant also alleged that Judge Gibson was without jurisdiction to issue the search warrant based on his status as a district judge in one district entering a search warrant for a residence in another district.

A hearing was held on the motions on November 9, 2009. Sergeant Ephlin testified that prior to securing the search warrant, he was aware that appellant was on probation. Sergeant Ephlin stated that he had hoped to approach appellant outside his residence and request a search of the house. However, before that opportunity had presented itself, Sergeant Ephlin felt he had compiled enough information to obtain a search warrant. Sergeant Ephlin testified that his affidavit referenced several different sources, including two confidential informants, an anonymous caller, police officers, and the city public safety director. Sergeant Ephlin admitted that the affidavit did not specifically identify the dates and times when the confidential informants saw drugs at appellant's residence. Sergeant Ephlin testified that despite that, he believed he had enough to procure a warrant. Lieutenant Robb Rounsavall also testified, and his testimony was consistent with that of Sergeant Ephlin. In addition, Bobby Trump testified that he spoke with both Sergeant Ephlin and Lieutenant Rounsavall in January 2009 regarding two separate anonymous tips that Trump's office had received on its telephone hotline regarding drugs being sold from appellant's residence.

On November 16, 2009, the circuit court entered an order denying appellant's motion to reveal the informants' identities and denying appellant's motion to suppress on both the jurisdictional issue and the sufficiency issue. Thereafter, appellant entered a conditional plea of guilty and filed a timely notice of appeal for this court's review.

## I. *Whether the Circuit Court Erred in Denying Appellant's Motion to Suppress*

Appellant's first argument on appeal is that the circuit court erred in denying his

motion to suppress evidence found during a search of appellant's home because the affidavit used to secure the search warrant failed to establish probable cause for the search. Specifically, appellant contends that the affidavit failed to sufficiently establish the reliability of the ⌐₆confidential informants or the anonymous caller and failed to include any mention of the specific dates and times with regard to the information provided by the informants. Moreover, appellant maintains that the information in the affidavit provided by informants could not be the basis for probable cause because it was stale.

When reviewing the denial of a motion to suppress evidence, this court conducts a de novo review based upon the totality of the circumstances, reversing only if the circuit court's ruling is clearly against the preponderance of the evidence. *Morgan v. State*, 2009 Ark. 257, 308 S.W.3d 147. Issues regarding the credibility of witnesses testifying at a suppression hearing are within the province of the circuit court. *Id.* Any conflicts in the testimony are for the circuit court to resolve, as it is in a superior position to determine the credibility of the witnesses. *Id.*

Rule 13.1 of the Arkansas Rules of Criminal Procedure sets out the requirements for the issuance of a search warrant and provides that

The application for a search warrant shall describe with particularity the persons or places to be searched and the persons or things to be seized, and shall be supported by one (1) or more affidavits or recorded testimony under oath before a judicial officer particularly setting forth the facts and circumstances tending to show that such persons or things are in the places, or the things are in possession of the person, to be searched. If an affidavit or testimony is based in whole or in part on hearsay,

the affiant or witness shall set forth particular facts bearing on the informant's reliability and shall disclose, as far as practicable, the means by which the information was obtained. An affidavit or testimony is sufficient if it describes circumstances establishing reasonable cause to believe that things subject to seizure will be found in a particular place. Failure of the affidavit or testimony to establish the veracity and bases of knowledge of persons providing information to the affiant shall not require that the application be denied, if the affidavit or testimony viewed as a whole, provides a substantial basis for a finding of reasonable cause to believe that things subject to seizure will be found in a particular place.

⌐₇Ark. R.Crim. P. 13.1 (2010). The task of the issuing magistrate is to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying the hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Coggin v. State*, 356 Ark. 424, 156 S.W.3d 712 (2004). The duty of this court is to simply ensure that the magistrate had a substantial basis for concluding probable cause existed. *Id.* Our review of probable cause for the issuance of a warrant is confined to the information contained in the affidavit as that was the only information before the magistrate when he issued the warrant. *George v. State*, 358 Ark. 269, 189 S.W.3d 28 (2004).

Appellant first claims that the affidavit was deficient because it failed to establish the reliability of the informants providing the information. Rule 13.1 requires that where an affidavit or testimony is based in whole or in part on hearsay, the affiant shall set forth particular facts bearing on

the informant's reliability. However, Rule 13.1(b) also provides that the failure of the affidavit or testimony to establish the veracity and bases of knowledge of persons providing information to the affiant shall not require that the application be denied if the affidavit or testimony, viewed as a whole, provides a substantial basis for a finding of reasonable cause to believe that things subject to seizure will be found in a particular place.

Moreover, there is no fixed formula in determining an informant's reliability. *Morgan v. State, supra.* Factors to be considered in making such a determination include whether the informant's statements are: (1) incriminating; (2) based on personal observations of recent criminal activity; and (3) corroborated by other information. *Id.* Additionally, facts showing that the informant has provided reliable information to law enforcement in the past may be considered in determining the informant's reliability in the present case. *Langford v. State,* 332 Ark. 54, 962 S.W.2d 358 (1998).

We are satisfied that Sergeant Ephlin's affidavit in this case sufficiently established the reliability of the two confidential informants to provide the basis for the issuance of a search warrant. The affidavit states that the second informant has provided reliable information in the past that led to the arrest of more than five individuals. Under our precedent in *Langford,* facts showing an informant has provided dependable information in the past can be used to bolster the reliability of an informant. Moreover, the first informant provided information that was personally incriminating, admitting the he or she had bought drugs from appellant in the past. In addition, the surveillance of the law-enforcement officers when the first informant attempted to make a controlled buy from appellant corroborates that informant's reliability. Furthermore, taken together the two separate informants provided consistent information to law enforcement, both stating that they had independently observed large quantities of methamphetamine at appellant's residence and that appellant often changed his routine of selling drugs out of his home.

Next, appellant claims that the affidavit is deficient because the information contained in it was stale and untimely. There is no clear-cut test for determining when information has become stale. *Ilo v. State,* 350 Ark. 138, 148–49, 85 S.W.3d 542, 548–49 (2002) (citing *United States v. Smith,* 266 F.3d 902 (8th Cir.2001)). Rather, the timeliness of the information depends on the circumstances of the case, including the nature of the unlawful activity. *Id.* Moreover, the timeliness of the information is not considered separately; rather, "the length of the delay is considered together with the nature of the unlawful activity and in the light of common sense." *Gilbert v. State,* 341 Ark. 601, 605, 19 S.W.3d 595, 598 (2000). In *Gilbert,* we noted that the ultimate criterion in determining the degree of evaporation of probable cause is not case law but reason. 341 Ark. at 606, 19 S.W.3d at 598. The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock, including the character of the crime, of the criminal, of the thing to be seized, and of the place to be searched. *Id.* Thus, probable cause cannot be quantified by merely counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit; rather, time factors must be examined within the context of a specific case and the nature of the crime being investigated. *Ilo,* 350 Ark. at 148–49, 85 S.W.3d at 548–49. The significance of the nature of the activity was explained by the United

States Court of Appeals for the Tenth Circuit in *United States v. Johnson:*

> Where the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time. However, where the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant.

461 F.2d 285, 287 (10th Cir.1972). The crimes of selling narcotics and illegal liquor have been recognized as types of ongoing criminal activity that are considered protracted or continuous, thus establishing a course of conduct. *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) (in a footnote, rejecting a claim of staleness where informant reported purchasing liquor from defendant within the past two weeks and there was a history of purchases over the past two years); *Smith*, 266 F.3d at 902 (refusing to suppress evidence resulting from warrant where affidavit showed ongoing narcotics sales on three separate occasions three months earlier); *Johnson*, 461 F.2d at 285 (refusing to suppress evidence where affidavit showed numerous sales of illegal liquor over a four-month period, with the last reported occasion being three weeks before the search warrant was obtained).

■ Applying the "common sense" approach of staleness to the present case, we are convinced that the information provided in the affidavit was sufficiently timely to establish probable cause for a search. The affidavit noted that information about possible drug activity at appellant's residence had been compiled over a two-year period. A year before the search took place, an informant provided information that appellant was selling methamphetamine from his home. That informant at-tempted a controlled buy at the house, but when appellant required the money before delivering the methamphetamine, the informant balked. The attempted buy was observed by law enforcement. Ten months later, a confidential informant who had provided reliable information in the past corroborated much of what the first informant had said. In addition, that second informant provided more detailed information regarding where the drugs and money were kept at the residence. One month later, two anonymous calls were made to the city public safety director reporting that drugs were being sold from appellant's home. It was reasonable for the district judge to determine that an ongoing criminal enterprise was being conducted out of the home. The affidavit provided information from several sources that drugs had been sold from the residence over, at least, the past year. Therefore, the information provided in the affidavit establishing drugs in the home between February 2008 and January 2009 was not stale to secure a search warrant executed on January 9, 2009.

■ Finally, appellant contends that the affidavit was deficient because it did not state with specificity the dates and times for the information provided by the informants. In *Collins v. State*, we held that a time-reference must be included in the affidavit supporting a search warrant, stating that:

> It is the uniform rule that some mention of time must be included in the affidavit for a search warrant. The only softening of this position occurs when time can be inferred from the information in the affidavit. For example, where an affidavit recited that the contraband was "now" in the suspect's possession and that the search was urgent, that was found to be adequate to satisfy the time requirement. . . . In another case where

the affidavit said that contraband was "recently" seen, coupled with the use of present tense as to the location of the contraband, that was held to be sufficient. . . . Time is crucial because a magistrate must know that criminal activity or contraband exists where the search is to be conducted at the time of the issuance of the warrant. . . . That is not an unreasonable nor technical demand of the law.

280 Ark. 453, 456–57, 658 S.W.2d 877, 879 (1983); *see also George v. State,* 358 Ark. 269, 284, 189 S.W.3d 28, 37 (2004); *Herrington v. State,* 287 Ark. 228, 697 S.W.2d 899 (1985).

■ Here, Sergeant Ephlin provided sufficient time references in his affidavit to secure the search warrant. He noted two specific dates for information that he had received—February 8, 2008, and January 5, 2009. As to the second informant, he gave the date as December 2008. Even though he could not provide a specific date as to that information, his inclusion of the month and year met the requirement of a time reference as explained in *Collins.*

We affirm the circuit court's denial of appellant's motion to suppress evidence found during the search of his residence. The information provided in the affidavit securing the search warrant was adequate for the circuit court to conclude that there was probable cause contraband would be found in appellant's residence.

## II. *Whether District Judge Had Jurisdiction to Issue Search Warrant*

Appellant's second and third points on appeal both concern whether the district court judge had jurisdiction to issue the search warrant in this case.[1] Appellant makes both a statutory-based and a rule-based argument to support his claim that the district judge lacked jurisdiction.

■ First, appellant argues that pursuant to Ark.Code Ann. § 16–17–929 (Repl.2010), because Judge Gibson was a district court judge of Osceola District in Mississippi County, he had no jurisdiction to issue a search warrant for a residence in the Chickasawba District of Mississippi County. We review issues of statutory interpretation de novo. *Maddox v. City of Fort Smith,* 369 Ark. 143, 251 S.W.3d 281 (2007). It is for this court to decide what a statute means. *Id.* In this respect, we are not bound by the trial court's decision; however, in the absence of a showing that the trial court erred, its interpretation will be accepted as correct on appeal. *Id.* When reviewing issues of statutory interpretation, we are mindful that the first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *Id.* A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure and doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *Id.* When a statute is clear, however, it is given its plain meaning, and we will not search for legislative intent; rather, that intent must be gathered from the plain

---

1. We note that a similar issue of whether District Court Judge Gibson had authority to issue a search warrant is also presented in *McCormick v. State,* 2010 Ark. 387, 2010 WL 4156299 (per curiam), handed down simultaneously with this case. However, the argu- ments made and authorities relied on by the parties in the proceedings in the circuit court and on appeal differ in each case, and this accounts for the distinctions between the opinions on this issue.

meaning of the language used. *Id.* In addition, we construe court rules using the same means and canons of construction used to interpret statutes. *Johnson v. Dawson,* 2010 Ark. 308, 365 S.W.3d 913.

Specifically, appellant contends that, Ark.Code Ann. § 16–88–105 (Repl.2010), governs the territorial jurisdiction of district courts and restricts that jurisdiction to "offenses committed within the limits of the jurisdiction of the courts, as prescribed by the statutes creating or regulating them." Appellant maintains that under the unambiguous wording of § 16–17–929(c), Judge Gibson's jurisdiction, as the District Judge for the Osceola District, is limited to the Osceola District. Appellant points to Rule 13.1 of the Arkansas Rules of Criminal Procedure, which states that "[a] search warrant may be issued only by a judicial officer." He maintains that Rule 1.6 of the Arkansas Rules of Criminal Procedure defines "a judicial officer" as a "person in whom is vested authority to preside over the trial of criminal cases." Therefore, appellant asserts that Judge Gibson was only "a judicial officer" for the Osceola District and was without jurisdiction to issue a search warrant for the Chickasawba District.

Appellant also avers that jurisdiction of district courts is established by the Constitution and by statute, and while amendment 80, § 7 provides that this court has the authority to establish the jurisdictional amount and subject matter of civil cases for district courts, § 10 provides that

> [t]he General Assembly shall have the power to establish jurisdiction of all courts and venue of all actions therein, unless otherwise provided in this Constitution, and the power to establish judicial circuits and districts and the number of judges for Circuit Courts and District Courts, provided such circuits

or districts are comprised of contiguous territories.

Appellant asserts that *Brenk v. State,* 311 Ark. 579, 847 S.W.2d 1 (1993), should no longer be considered good law because that decision predated amendment 80 and the legislative enactments. Appellant cites cases from other jurisdictions that have recognized that a judicial officer's limitation of authority to issue a search warrant is limited to his or her own district. *See, e.g., United States v. Bailey,* 193 F.Supp.2d 1044 (S.D.Ohio 2002); *United States v. Strother,* 578 F.2d 397 (D.C.1978); *State v. Plankinton,* 62 Or.App. 554, 661 P.2d 1387 (1983). Finally, appellant argues that this court should adopt his interpretation of § 16–17–929 to eliminate the possibility of "judge shopping" by law enforcement when seeking a search warrant.

In response, the State argues that Arkansas law imposes no territorial limitation on a judicial officer's authority to issue search warrants. Under Ark.Code Ann. § 16–88–101(c) (Repl.2005), a district court may issue search warrants as authorized by the Arkansas Rules of Criminal Procedure in the prosecution of a person for an offense within the exclusive jurisdiction of the circuit court. Pursuant to Rule 13.1, a search warrant may be issued by a judicial officer, defined as a person who is vested with authority to preside over the trial of criminal cases. Section 16–88–101(a)(4) provides that district courts have original jurisdiction to conduct trials for violations of city and county ordinances and state-law misdemeanors committed within the territorial jurisdiction of the district court.

Reading the statutes and rules together, the State claims that "it is clear that district judges are authorized to issue search warrants because they are judicial officers with the authority to try criminal cases and that authority is not restricted to the

districts to which they are elected." The State argues this conclusion is also supported by § 16–82–201(a), which allows a search warrant to be based upon sworn oral testimony, and § 16–81–104(a)(1)(A), which states that an arrest warrant may be issued by circuit judge, district judge, city judge, or magistrate. According to the State, "these provisions make clear the legislature's intent that any judge may issue a search or arrest warrant, not just a judge acting within a particular territorial jurisdiction." The State stresses that "any judicial officer" means exactly that, without specification, including without specification of their territorial districts.

Additionally, the State counters appellant's "judge shopping" argument by noting that, in this case, there is no allegation that such conduct occurred. Also, any alleged problem of "judge shopping" would not necessarily be rectified by adopting the appellants' position, as numerous judicial districts have more than one judge.

 This court has already adopted the State's construction of "any judicial officer" in *Brenk*, which construed the prior version of § 16–82–201(a). In *Brenk*, we noted that the statute allowed a search warrant to be issued by any judicial officer, and the statute did not "give any indication that the jurisdiction of a judicial officer in issuing search warrants is limited to the county in which the judicial officer was elected or appointed." 311 Ark. at 590, 847 S.W.2d at 7. The enactment of § 16–17–929 had no impact on this court's interpretation of § 16–82–201(a), which is still good law and considered to be a part of the statute itself, as the legislature has

not amended the statute to clarify a different meaning.[2] *Brenk* makes clear that statutes setting forth a court's territorial jurisdiction to adjudicate controversies between litigants does not control the question of when they may issue a search warrant. *See State v. Fountain*, 350 Ark. 437, 88 S.W.3d 411 (2002) (citing to our holding in *Brenk* to affirm a search warrant issued by a municipal judge in North Little Rock to search a residence in Little Rock); *Lancaster v. State*, 81 Ark.App. 427, 105 S.W.3d 365 (2003) (following *Brenk* and holding that a search warrant issued by a judge in Izard County for a search in Stone County was valid under § 16–82–201).

 The adoption of both § 16–17–929 and amendment 80 did not affect the validity of *Brenk*, as § 16–17–929 speaks only to "territorial jurisdiction," which "deals only with where the offense is to be tried, not with whether the state lacks the basic authority to apply its criminal law to the events in question." *State v. Osborn*, 345 Ark. 196, 199, 45 S.W.3d 373, 375 (2001) (citing Wayne R. LaFave, Criminal Procedure § 16.1(a), at 461 (2d ed.1999)). Because § 16–17–929 governs only where cases are to be tried, it does not conflict with the holding in *Brenk*. Amendment 80 provides that the General Assembly has the power to establish jurisdiction of all courts, and the legislature has concluded that district courts may issue search warrants "as authorized by the Rules of Criminal Procedure." § 16–88–101(c). Consequently, Rule 13.1 provides that a "judicial officer" may issue a search warrant.

2. It is well-settled that any interpretation of a statute by this court subsequently becomes a part of the statute itself. *Pifer v. Single Source Transp.*, 347 Ark. 851, 69 S.W.3d 1 (2002). The General Assembly is presumed to be familiar with this court's interpretations of its statutes, and if it disagrees with those interpretations, it can amend the statutes. *Id.* Without such an amendment, however, our interpretation of a statute remains the law. *Id.*

The plain language of Ark.Code Ann. § 16–17–929 refers to a district judge's territorial jurisdiction, not his authority to issue search warrants pursuant to Rule 13.1. We are convinced that our precedent in *Brenk* still applies and that the district judge in this case had authority to issue a search warrant for the other district in his county.

Next, appellant argues that because Judge Gibson was never appointed a criminal magistrate as contemplated by Rule 1.8 of the Arkansas Rules of Criminal Procedure, issuing a search warrant was outside the scope of his judicial jurisdiction. He contends that there was no need for our court to allow for the designation of a criminal magistrate if all district court judges were within their jurisdiction to issue search warrants throughout the state. The State counters that appellant's argument is completely without merit.

Rule 1.8 states, in pertinent part:

(a) With the concurrence of a majority of the circuit court judges of a judicial circuit, the administrative judge of the judicial circuit may designate one or more district court judge(s), with the judge's consent, as a referee or master, who shall be referred to as a "criminal magistrate" for the judicial circuit, and who shall be authorized to perform any of the duties described in subsection (b) of this rule. A criminal magistrate shall be subject at all times to the superintending control of the circuit judges of the judicial circuit, and the criminal magistrates territorial jurisdiction shall be coextensive to that of the circuit judges of the judicial circuit unless specifically limited by the designating order.

(b) A criminal magistrate may perform the following duties with respect to an investigation or prosecution of an offense lying within the exclusive jurisdiction of the circuit court:

(i) Issue a search warrant pursuant to Rule 13.1.

. . . .

(d) Nothing in this order shall affect the authority of a district court judge to perform the duties described in subsection (b) as otherwise permitted by these Rules or other law.

In our per curiam adopting Rule 1. 8, we recognized that "[d]istrict court judges as judicial officers are authorized to perform numerous duties under the Rules of Criminal Procedure." *In re Adoption of Rules of Criminal Procedure, Rule 1.8,* 361 Ark. App'x 447 (2005) (per curiam). In adopting the rule, we stated:

This rule is not intended to change the powers of district court judges as judicial officers nor is it intended to require the designation of a criminal magistrate in any locale. Rather, the intent is to expressly recognize powers held by district court judges under the Rules of Criminal Procedure and to give structure to these powers in the naming of a criminal magistrate if a specific locale so chooses.

Thus, Rule 1.8 permits, but does not require, the designation of a "criminal magistrate" if desired by a certain locale, but it did not alter the authority district court judges already had in criminal matters.

It is clear from our per curiam that we consider district judges to be "judicial officers," and Rule 13.1 is clear that a "judicial officer" may issue a search warrant. A district judge is not, as appellants suggest, a "judicial officer" in some circumstances but not others. As to the reason why Rule 1.8 was enacted, it was basically to codify or formalize powers that district judges already had, or in the

words of our per curiam, "to expressly recognize powers held by district court judges under the Rules of Criminal Procedure and to give structure to those powers." But appointment as a criminal magistrate is clearly not required in order for a district judge to issue a warrant, either inside or outside his own territorial district. Thus, the fact that Judge Gibson had not been appointed as a criminal magistrate under the rule was of no consequence to his authority to issue the search warrant.

We are satisfied that Osceola District Court Judge Gibson had jurisdiction to issue a search warrant for a residence in the Chickasawba District of Mississippi County. Therefore, we affirm the circuit court's denial of appellant's motion to suppress on the basis that Judge Gibson lacked jurisdiction.

### III. *Whether the Circuit Court Erred in Refusing to Order the State to Reveal Identities of Confidential Informants*

■ Appellant's final point on appeal is that the circuit court abused its discretion in denying his motion to reveal the identity of the confidential informants referred to in the affidavit to secure the search warrant. We dismiss this point on appeal as not properly before us because it is not a cognizable appeal from a conditional plea of guilt.

Pursuant to Arkansas Rule of Criminal Procedure 24.3(b) (2010), a defendant who enters a conditional plea of guilty may appeal from "an adverse determination of a pretrial motion to suppress seized evidence or a custodial statement or a pretrial motion to dismiss a |₂₀charge because not brought to trial within the time provided in [the rules]." Appellant's appeal is from an adverse ruling on his motion to reveal the identities of the confidential informants. We decline to address appellant's third point on appeal because Rule 24.3(b) does not provide any appellate relief following a conditional guilty plea for such an argument.

Affirmed in part; dismissed in part.