

Cite as 2013 Ark. 396

# SUPREME COURT OF ARKANSAS

No. CR–13–106

| | | |
|---|---|---|
| JOSHUA R. ALLEN | | **Opinion Delivered** October 10, 2013 |
| | APPELLANT | |
| | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTH DIVISION [NO. 60CR-09-3411] |
| V. | | |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE HERBERT WRIGHT, JR., JUDGE |
| | | AFFIRMED. |

**CLIFF HOOFMAN, Associate Justice**

Appellant Joshua R. Allen appeals from his conviction for capital murder, for which he received a life sentence, and his convictions for four counts of committing a terroristic act, for which he received concurrent sentences of five years' imprisonment on each count, to run consecutively to the life sentence. He was also found guilty of using a firearm during the commission of the felony and received a sentence enhancement of five years, with this sentence also to run consecutively to the capital-murder sentence, for a total of life plus ten years. For his sole point on appeal, Allen argues that the circuit court erred in excluding Ark. R. Evid. 404(b) testimony. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1–2(a)(2) (2013). We affirm.

Allen was charged with capital murder and four counts of committing a terroristic act in connection with the death of Latonio Quince on August 4, 2009, after Allen fired five



shots at a vehicle in which Quince was a passenger. Antonio Johnson, who was the driver of the vehicle, was uninjured. Allen's first jury trial in March 2011 ended in a mistrial. His second trial took place in October 2012. Although Allen does not challenge the sufficiency of the evidence supporting his convictions, a review of relevant testimony is necessary to understand the issue presented on appeal.

In Allen's statement to police, as well as his testimony at the second trial, he claimed that Johnson, who was an acquaintance, had called him on August 4, 2009, in order to buy marijuana. According to Allen, he told Johnson to meet him at a Valero gas station on Stagecoach Road and to come alone. When Allen drove into the parking lot and saw that Johnson had a passenger in his vehicle, Allen left the gas station and turned onto the Mabelvale West access road near Interstate 30. Allen stated that, as he was driving on the overpass, he noticed Johnson's vehicle pull up beside him in the left lane and saw the passenger pull a gun and point it at him. Allen stated that he was scared that he was going to get shot in the face and that he grabbed his 9mm handgun and started shooting at Johnson's vehicle. He claimed that he could not speed up and outrun Johnson because there was a truck in front of him and that he could not swerve to the right because there was a curb. Allen stated that Johnson's vehicle eventually stopped and that he kept on going to a friend's house, who told Allen that he needed to get rid of the car. After he left his friend's home, Allen phoned the police and reported his car stolen, although he did not wait for a police officer to come and speak with him as he was instructed to do. Later that evening, Allen poured gasoline inside the vehicle and set it on fire. Allen then turned himself in to police



on August 6, 2009, after learning that there was a warrant for his arrest. Allen claimed that he was scared and "freaking out" after the shooting and that he was not thinking when he destroyed his car. He further claimed that there had been no previous disputes between him and Johnson, that he had not intended to hurt anyone when he had shot at the vehicle, and that he had only done so in self-defense.

Johnson also gave a statement to police and testified at both trials. Johnson stated that he had picked up his friend, Quince, at the Valero station on August 4, 2009, and that they were going to Johnson's cousin's house to visit. As they were driving on Mabelvale West, Johnson noticed in his rearview mirror that a white Crown Victoria was speeding up behind him. As the vehicle pulled alongside him, Johnson stated that he recognized Allen, who began shooting at them. When he realized that Quince had been shot, Johnson pulled off the road briefly to check on him, then took off for what he believed was the nearest hospital. Two nurses leaving the building assisted Quince after Johnson pulled up in his vehicle and yelled that he needed help; however, Quince died almost immediately from the gunshot wound to his flank. In his initial statement to police, Johnson claimed that he and Allen were acquaintances and that he had no idea why Allen would have pulled a gun on him, other than a conflict over a female several years earlier. At Allen's first trial, however, Johnson admitted that he had stolen marijuana from Allen several years prior to the August 2009 incident. Although Johnson also initially claimed that he did not have a gun when he robbed Allen, he testified at the second trial that he had lied and admitted that he had in fact robbed Allen at gunpoint. Allen denied that this prior incident had ever happened.



Prior to the second trial, the circuit court held an evidentiary hearing on whether the testimony of Demetrius Thompson would be admissible at trial regarding certain alleged bad acts by Johnson, who was the State's primary eyewitness. In his proffered testimony, Thompson would have stated that in May 2010, Johnson approached him about "a lick," and persuaded him to rob a person named Jason Carter at gunpoint in order to steal Carter's drugs and wheel rims. Thompson would have further testified that Johnson, who was supposed to wait for him at a certain location, left him, forcing him to steal the victim's car. Thompson stated that he was currently serving a prison sentence for that robbery. For the second bad act alleged by Thompson, Johnson allegedly gave Thompson a handgun and counterfeit bills to buy drugs from Andre Farrell in April 2010. Thompson would have testified that Johnson again drove off and left him during that incident.

The State argued that this proffered testimony was not relevant to the charges against Allen or to his defense of justification and that it was not admissible under Ark. R. Evid. 404(b) or 608(a). The defense contended that this evidence was admissible because the alleged bad acts involved circumstances similar to the ones in the present case, in that the defense would contend at trial that the victim in this case, Quince, was in the same position as Thompson had been in the other incidents. After reviewing briefs submitted by the parties on the issue, the circuit court entered an order denying Allen's motion to admit Thompson's proffered testimony.

At the conclusion of the trial, Allen was convicted of all charges. He waived jury sentencing, and the circuit court sentenced him to a total of life plus ten years' imprisonment.



Allen filed a timely notice of appeal, and his sole argument on appeal is whether the circuit court erred in excluding Demetrius Thompson's testimony.

Circuit courts have broad discretion in deciding evidentiary issues, and their rulings on the admissibility of evidence are not reversed on appeal absent an abuse of discretion. *Laswell v. State*, 2012 Ark. 201, 404 S.W.3d 818.

Allen contends that Thompson's testimony was relevant and admissible under Ark. R. Evid. 404(b) (2013) because the evidence goes to show the modus operandi of Antonio Johnson, as well as motive, opportunity, intent, plan, and knowledge. According to Ark. R. Evid. 401 (2013), relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." All relevant evidence is admissible, except as otherwise provided by the rules. Ark. R. Evid. 402 (2013). Under Rule 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith; however, it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Thus, evidence admitted under Rule 404(b) must be independently relevant to a material issue in the case. *Cook v. State*, 345 Ark. 264, 45 S.W.3d 820 (2001). We have further held that modus operandi evidence is only admissible where two requirements are met: (1) both acts must be committed with the same or strikingly similar methodology, and (2) the methodology must be so unique that both acts can be attributed to one individual. *Id.*



In the present case, there is no question as to the identity of the accused, the victim, or any of the key witnesses in the case, and Allen has failed to demonstrate how Johnson's modus operandi in other alleged bad acts, which purportedly occurred after the August 2009 shooting incident, is relevant to any material issue in this case. Nor has Allen shown how the proffered evidence is admissible for any of the other purposes set forth in Ark. R. Evid. 404(b). While Allen asserted justification as a defense to the charges, Quince, not Johnson, was the person who Allen claims pointed a gun at him and forced him to fire at the vehicle in self-defense. Furthermore, even assuming, as Allen asserts, that evidence of Johnson's violent character was relevant to the issue of who was the aggressor and whether Allen reasonably believed he was in danger of suffering unlawful deadly physical force on August 4, 2009, this would only give Allen the right to introduce specific instances of Johnson's violent character that were directed at him or were within his knowledge. *Thompson v. State*, 306 Ark. 193, 813 S.W.2d 249 (1991); *Halfacre v. State*, 277 Ark. 168, 639 S.W.2d 734 (1982). Neither of the bad acts alleged against Johnson in Thompson's proffered testimony was directed at Allen, nor were they within his knowledge, as they both occurred after the shooting incident at issue in this case.

Allen also contends that Johnson "opened the door" to evidence of his other recent bad acts by testifying that he had previously robbed Allen at gunpoint but claiming that he had since changed and did not "live that life" anymore. However, this is essentially impeachment of Johnson's credibility as a witness, and as the State argued at the evidentiary hearing, specific instances of a witness's conduct for the purpose of attacking or supporting



his credibility, other than a conviction as provided in Ark. R. Evid. 609, may not be proved by extrinsic evidence. Ark. R. Evid. 608(b) (2013). Because Allen has failed to show that Thompson's proffered testimony regarding Johnson's bad acts is relevant to any material issue in this case, the circuit court did not abuse its discretion in excluding this evidence, and we therefore affirm.

*Rule 4-3(i) Review*

In compliance with Ark. Sup. Ct. R. 4–3(i), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Allen, and no prejudicial error has been found.

Affirmed.

CORBIN and DANIELSON, JJ., concur.

**DONALD L. CORBIN, concurring.** While I agree with the majority opinion that the circuit court did not abuse its discretion in excluding the proffered testimony of Demetrius Thompson, I must write separately because I do not agree with the majority's analysis of Appellant's argument that Antonio Johnson opened the door to evidence of his other bad acts. In reviewing Appellant's argument on this point, it is apparent that he fails to provide any convincing argument or citation to authority in support of his contention that Thompson's testimony was admissible "to show the modus operandi of Antonio Johnson, as well as motive, opportunity, intent, plan and knowledge." It is a well–settled principle of appellate jurisprudence that this court will not consider an argument, even a constitutional one, when the appellant presents no citation to authority or convincing argument in its support, and it



is not apparent without further research that the argument is well taken. *E.g.*, *Green v. State*, 2012 Ark. 347, ___ S.W.3d ___. Accordingly, I would decline to address the merits of Appellant's alternative argument.

DANIELSON, J., joins in this concurrence.

*Montgomery, Adams & Wyatt, PLC*, by: *James W. Wyatt*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Nicana C. Sherman*, Ass't Att'y Gen., for appellee.