

# SUPREME COURT OF ARKANSAS

**No.** CR–13–444

| | | |
|---|---|---|
| | | **Opinion Delivered** January 23, 2014 |
| NIGEL R. LEWIS | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. CR-11-2206] |
| V. | | |
| | | HONORABLE JAMES LEON JOHNSON, JUDGE |
| STATE OF ARKANSAS | APPELLEE | AFFIRMED. |

**JOSEPHINE LINKER HART, Associate Justice**

A jury found Nigel R. Lewis guilty of capital murder, and he was sentenced to a term of life imprisonment without the possibility of parole. He was also convicted of aggravated robbery, aggravated residential burglary, theft of property, and fraudulent use of a credit card and received respective sentences of imprisonment of twenty-five years, twenty-five years, ten years, and ten years. The victim, Gail Miller, was an elderly woman who was found dead in the bathroom of her North Little Rock residence where she lived alone. The evidence showed that she had died as a result of strangulation and stab wounds to the neck. At the time of his arrest, Lewis was in possession of Miller's automobile in which gloves were found with Miller's blood on them. The evidence also showed that Lewis had used Miller's bank cards.

On appeal, Lewis does not challenge the sufficiency of the evidence. Rather, he argues that the circuit court erred by not allowing him to cross-examine Shayla Johnson, who was charged as Lewis's codefendant, about her prior misdemeanor third-degree domestic-battery

SLIP OPINION

conviction for having stabbed Lewis. Lewis argues that evidence about this stabbing was admissible, first, to establish Johnson's bias against Lewis and second, to prove that it was Johnson who had stabbed Miller. We hold that the circuit court did not abuse its discretion in excluding the evidence and affirm Lewis's convictions and sentences.

We set out those parts of the record necessary for an analysis of Lewis's argument. At a pretrial hearing, the State sought to exclude testimony that Johnson had a prior conviction for third-degree domestic battery against Lewis, arguing that testimony about the conviction would not be admissible at trial because the conviction was a misdemeanor and did not go to Johnson's truthfulness. The State further asserted that the evidence had no relevance as to Johnson's bias because Johnson and Lewis reunited after Johnson's conviction, and in any event, it would not establish that Johnson was biased against Lewis but instead would establish that Lewis was biased against Johnson. The State further asserted that if the evidence was introduced by Lewis, the State would then seek to present rebuttal evidence to show that after Johnson had pleaded guilty to the charge, Lewis remarked to a deputy prosecutor that it was not Johnson's fault because he had attacked Johnson, who was defending herself.

In response, Lewis's counsel argued that the testimony concerning Johnson's stabbing of Lewis was relevant to show "violence on Johnson's behalf," without the necessity of discussing the conviction. Lewis's counsel further stated, "[A]nything she says is subject to impeachment and I think the fact that she has stabbed my client before is something that should be out there." The circuit court ruled that the testimony was inadmissible. The court noted that allowing the testimony would "open up a lot of doors to some other things and

it does not go to truthfulness." The court further observed, "[I]t doesn't go to . . . two or three instances so I'm not going to allow it."

Johnson testified at trial about the crimes. According to Johnson, she had known Lewis for about five years, and they had dated, lived together, and then broken up. On February 24, 2011, Lewis called her and asked if he could see her. She testified that though they were not "together," she told him he could come by, and they spent the night together. The next day, Lewis told her that he intended to commit a robbery at a residence in North Little Rock where he had previously cut the grass. Lewis described the resident, Miller, as an older lady who lived alone and whose children lived out of state. Lewis stated that because Miller knew him from when he cut her grass, he intended to gain access to the residence by asking Miller if he could use her restroom. Johnson testified that Lewis obtained a butcher knife and black duct tape from Johnson's cousin and purchased a pair of brown cotton gloves. Johnson admitted that she drove Lewis to North Little Rock and left him less than half a block from where Miller lived but testified that she refused to go with him to Miller's residence.

Johnson testified that later that night, Lewis met her at her cousin's home. At Lewis's invitation, Johnson drove to a hotel room Lewis had rented, following Lewis as he drove a car that she identified as Miller's. At the hotel room, where Johnson and Lewis stayed for four nights, Lewis explained that he had entered Miller's residence quickly after asking to use the restroom and that he had tied Miller to a chair with the tape, threatened her to obtain her personal identification numbers for her bank cards, and taken Miller's laptop computer. Johnson identified Miller's laptop computer as the computer that she saw in Lewis's hotel

SLIP OPINION

room. She testified that when she used the computer at the hotel, the log-in name on the computer was "Gail Miller." Johnson observed Lewis using bank cards to obtain money from an ATM and to purchase items from various stores and over the Internet. Johnson also testified that when Lewis received a call that a billing address was incorrect, she spoke on the phone to verify the cardholder's name, Gail Miller.

Johnson admitted that she had taken a negotiated plea of twenty years' imprisonment conditioned upon her truthful testimony against Lewis. Johnson further testified that she had given four statements to the police before she agreed to testify and that she had not been completely honest during the interviews, as she did not discuss her own involvement in the crimes.

During cross-examination by Lewis's counsel, Johnson admitted that she had previously been convicted of forgery, a felony. She further admitted that she had pleaded guilty to first-degree murder in Miller's death after the State reduced the charge from capital murder. She acknowledged her understanding that she could have received a life sentence without parole for capital murder, and because she pleaded guilty to the reduced charge, she would be eligible for parole after serving fourteen years. Johnson testified that she was not in a relationship with Lewis when he called her on February 24, 2011.

Following cross-examination, Lewis's counsel approached the bench and asserted that the state medical examiner had testified that the force used to stab Miller could have been from a man or a woman. Counsel argued that evidence of Johnson stabbing Lewis was admissible under Rule 404(b) of the Arkansas Rules of Evidence, arguing, "I can get into her past and

SLIP OPINION

then get into her MO." The State argued that evidence of "MO" required evidence of more than one instance. The circuit court denied the motion.

On appeal, Lewis asserts that the circuit court erred by not allowing him to cross-examine Johnson about her misdemeanor third-degree domestic-battery conviction for stabbing Lewis. First, Lewis argues that the evidence would have shown that Johnson was biased against him. Bias is almost always relevant because the jury, as finder of fact and weigher of credibility, assesses all evidence that might bear on the accuracy and truth of a witness's testimony. *Fowler v. State*, 339 Ark. 207, 219, 5 S.W.3d 10, 16–17 (1999) (citing *United States v. Abel*, 469 U.S. 45, 52 (1984)).

In this case, however, we conclude that the testimony was marginally relevant and had very little, if any, probative value relating to bias. Johnson's stabbing of Lewis at some point in the past does not necessarily establish that Johnson was biased against Lewis at trial, especially given Johnson's testimony that on February 24, 2011, they spent the night together. Moreover, to establish bias, Lewis's counsel questioned Johnson about her plea bargain with the State, and Lewis's counsel had the opportunity to cross-examine Johnson regarding any animosity Johnson may have harbored against Lewis as a result of their relationship, without the necessity of delving into the circumstances surrounding the stabbing. Given the limited relevance to bias, the circuit court did not manifestly abuse its discretion in excluding the testimony. *See Billett v. State*, 317 Ark. 346, 349–50, 877 S.W.2d 913, 915 (1994) (holding that the circuit court did not manifestly abuse its discretion by excluding purported evidence of bias, in part because the evidence was, at most, marginally relevant and had very little, if any, probative value).

SLIP OPINION

Second, Lewis argues that Johnson's prior conviction for stabbing Lewis was proper Rule 404(b) evidence to establish his defense that "although he was a thief and used the stolen credit cards, he did not kill the victim," and that Johnson was the person who murdered Miller, noting the medical examiner's testimony that he could not say with medical certainty whether a man or a woman inflicted Miller's wounds. To the extent that Lewis's argument is that this evidence would be proper modus operandi evidence, we note that modus operandi evidence is admissible only if both acts were committed with the same or strikingly similar methodology that is so unique that both acts can be attributed to one individual. *Allen v. State*, 2013 Ark. 396, at 5. We will not reverse the circuit court's determination of admissibility absent an abuse of discretion. *Id.*

The mere observation that Johnson stabbed Lewis in a domestic battery and that Miller was then stabbed to death during an aggravated robbery and aggravated residential burglary does not demonstrate that both Lewis and Miller were stabbed with the same or strikingly similar methodology that is so unique that both acts can be attributed to Johnson. Other than noting that Lewis had been stabbed, no evidence was proffered regarding the circumstances surrounding the domestic battery. Thus, the circuit court did not abuse its discretion, as Lewis failed to establish that the evidence was proper modus operandi evidence.

Lewis further relies on Rule 404(b) of the Arkansas Rules of Evidence, which provides in part that "[e]vidence of other crimes, wrongs, or acts" may "be admissible for . . . proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Admission of extrinsic acts under Rule 404(b) does not require the degree of

SLIP OPINION

similarity between the crimes as that necessary to establish modus operandi, and the circuit court is granted considerable leeway in making a determination of admissibility. *Brunson v. State*, 368 Ark. 313, 325, 245 S.W.3d 132, 142 (2006).

This court was faced with a similar question in *Price v. State*, 365 Ark. 25, 35, 223 S.W.3d 817, 825 (2006). In a murder case where the victim suffered blunt-force trauma to the head, the defendant attempted to introduce a witness's misdemeanor conviction for domestic battery for striking her domestic partner in the head with a hammer. This court concluded that the evidence could not be admitted because the defendant "never made a defense" that the witness was the perpetrator of the murder. Similarly, aside from noting the medical examiner's testimony, which did not establish that the stabbing was done by a woman, Lewis does not otherwise show how he developed at trial his theory that Johnson stabbed Miller. As in *Price*, Lewis never put forth evidence to make a defense that Johnson was the person who stabbed Miller. Accordingly, we hold that the circuit court did not abuse its discretion.

Finally, because Lewis received a sentence of life imprisonment, the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Lewis, and no prejudicial error has been found. *See* Ark. Sup. Ct. R. 4–3(i) (2013).

Affirmed.

*Montgomery, Adams & Wyatt, PLC*, by: *Dale E. Adams*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Valerie Glover Fortner*, Ass't Att'y Gen., for appellee.